THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD TERRY *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 81—2597

Opinion filed March 8, 1983.

Jenner & Block, of Chicago (Keith F. Bode and C. John Koch, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean P. Karlos, and Louis F. Stalzer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Defendants, Duane Terry and his brother, Ronald Terry, were indicted for murder and armed violence. In a jury trial, both defendants were found guilty as charged and judgment was entered accordingly.

On their convictions for murder, Duane Terry was sentenced to serve 24 years in the Department of Corrections and Ronald Terry was sentenced to 20 years. No sentences were imposed on the armed violence judgments. Defendants appeal contending that they were not proved guilty beyond a reasonable doubt; that the trial court improperly instructed the jury on the law of accountability; that the prosecutor made improper and prejudicial comments during closing argument; and that the State's use of peremptory challenges during *voir dire* deprived defendants of a fair and impartial jury. For the reasons hereinafter stated, we reverse defendants' convictions and remand the cause for a new trial.

Timothy Davis was murdered on March 27, 1981. The State's evidence against the defendants consisted primarily of signed court-reporter statements defendants gave to an assistant State's Attorney on March 28, 1981, the day after the offense. In those statements defendants related that early in the morning on March 27, 1981, they were at Priscilla Lyons' apartment at 4525 South Federal in Chicago together with the victim, Timothy Davis, Ricky Myers and Bernard Lash. All of the men present were members of the Disciples street gang.

While they were in the apartment, Ronald Terry and Timothy Davis got into an argument and punched each other. After the fight, Ronald told Ricky Myers, "We was [*sic*] going to violate him," meaning Timothy Davis. Duane heard what his brother said, and Myers replied that he (Myers) was going to "kill a nigger later tonight." There is no evidence that Duane heard what Myers said. Both defendants saw Myers pick up a knife in the apartment. Ronald Terry knew that Myers was going to "[c]ut Timothy Davis with the knife." Priscilla Lyons then ordered everyone to leave her apartment. Both defendants, Bernard Lash, Ricky Myers and Timothy Davis went out into the hallway outside the apartment. Duane Terry said the group planned on "violating" Davis in the hallway and that Davis knew it. Duane held Davis as the men stepped into the hallway. Both defendants told the prosecutor that they "violated" Davis, Duane by pulling and hitting him and Ronald by beating him in the face with his hands. Duane held Davis while he was being beaten. Ricky Myers then tapped Ronald on the shoulder and when he moved to one side, Myers stabbed Davis once in the left side of his chest and once in the back of the head. Davis later died of the stab wound to his chest, which punctured the left thorax.

Bernard Lash ordered Ronald to "get rid of the knife" and he disposed of it in the incinerator room. Ronald later retrieved the knife

and brought it back to Priscilla Lyons who washed the blood off of it. The police recovered the knife and Ronald identified it for the prosecutor when he gave his statement. Ronald also found Myers' bloodstained jacket in the hallway and gave it to Priscilla who washed it.

## I

Defendants contend that they were not proved guilty beyond a reasonable doubt of murder. We cannot agree. We have set forth the evidence presented at trial and will not restate that evidence here. We have reviewed the record and are satisfied that there was sufficient evidence for the jury to conclude that both defendants aided and abetted Ricky Myers in murdering Timothy Davis.

## II

Defendants next contend that the trial court improperly instructed the jury on the law of accountability. The two instructions complained of are as follows:

"A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of a crime.

A person commits the crime of murder who himself or one for whose conduct he is responsible, kills an individual if, in performing the acts which cause death, he, or one for whose conduct he is responsible, intends to kill or do great bodily harm to that individual; or he, or one for whose conduct he is responsible, knows that such acts will cause death to that individual; or he, or one for whose conduct he is responsible, knows that such acts create a strong probability of death or great bodily harm to that individual."

The first instruction tracks the language of Illinois Pattern Jury Instruction, Criminal, No. 5.03 (1968) (hereinafter cited as IPI Criminal) except for the second to the last word which was changed from "the" to "a." We believe this change was erroneous because, under the instruction given, the jury could have found defendants responsible for Ricky Myers' stabbing of the victim merely upon proof that they knowingly aided and abetted him in committing a battery. That this does not accurately set forth the law of accountability is evident from an examination of the revised instruction 5.03:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an of-

fense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense." IPI Criminal No. 5.03 (2d ed. 1981).

Under this instruction, defendants could not be found guilty of murder unless the jury was satisfied that in committing a battery on the victim, defendants had the intent to promote or facilitate the murder and knowingly aided or abetted Myers in committing murder. (See *People v. Heflin* (1978), 71 Ill. 2d 525, 542-43, 376 N.E.2d 1367.) The effect of the instruction in the instant case was that the jury could have found defendants guilty of murder on an accountability theory without a determination that Myers' act of stabbing Davis was "in furtherance of" the battery defendants admittedly committed. (*People v. Kessler* (1974), 57 Ill. 2d 493, 497, 315 N.E.2d 29; *People v. Ruiz* (1982), 94 Ill. 2d 245, 254-55.) Such a finding is not in accord with the law. Where both the instruction defining murder and the issues instruction incorporated the concept of accountability which was improperly explained in the instruction on accountability, we cannot conclude that the error in the definition of accountability was harmless. For that reason, defendants' convictions must be reversed and the cause remanded for a new trial. In light of this disposition, it is unnecessary to reach defendants' other contentions.

Reversed and remanded.

STAMOS and HARTMAN, JJ., concur.