(No. 58233.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONALD TERRY *et al.*, Appellees.

*Opinion filed February 22, 1984.*

510

SIMON, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark Rotert and Michael B. Weinstein, Assistant Attorneys General, of Chicago, and Michael E. Shabat, Joan S. Cherry, James S. Veldman, Louis F. Stalzer, and Bruce A. Cardello, Assistant State's Attorneys, of counsel), for the People.

Keith F. Bode and C. John Koch, of Jenner & Block, of Chicago, for appellees.

JUSTICE MORAN delivered the opinion of the court:

In a jury trial in the circuit court of Cook County, defendants, Ronald Terry and Duane Terry, were each found guilty of murder and armed violence. Judgment was entered on the verdict. Each defendant was sentenced under the murder conviction; however, neither defendant was sentenced under the armed-violence conviction. The appellate court reversed and remanded the cause for a new trial. (113 Ill. App. 3d 302). Thereafter,

this court granted the State's petition for leave to appeal. 85 Ill. 2d R. 315.

The issues raised on review are: (1) Was the jury properly instructed on the law of accountability and murder? (2) Were the State's comments during its closing argument improper and prejudicial? and (3) Were defendants proved guilty beyond a reasonable doubt?

The evidence produced at trial indicates that on March 27, 1981, defendants, along with Timothy Davis, Ricky Myers, and Bernard Lash, were at Priscilla Lyons' apartment in Chicago. All five men were members of the same Chicago street gang. While at the apartment, a fistfight between Davis and Ronald Terry took place. After the fight subsided, Ronald Terry said to Myers, "we are going to violate [Davis]," to which Myers replied that he "was going to kill him a nigger." Duane Terry stated that he heard what Ronald said; however, there is no indication that he heard Myers' reply. Both defendants saw Myers take a knife from the kitchen in Lyons' apartment. Ronald Terry stated that he knew that Myers intended to "[c]ut Timothy Davis with the knife."

After being ordered by Lyons to leave her apartment, the five men went into the hallway, where they commenced attacking Davis. Duane Terry and Lash "violated" Davis by pulling and hitting him and then held Davis while Ronald Terry "violated" him by punching him in the face and chest. Myers tapped Ronald Terry on the shoulder and Terry stepped aside. Myers then stabbed Davis twice with the knife that he had taken from Lyons' apartment. Davis later died from a stab wound to his chest which punctured the left thorax.

Ronald Terry hid the knife in the incinerator room of the apartment building. Sometime later, he retrieved the knife and Lyons washed the blood from it. Lyons also washed Myers' bloodstained jacket which Ronald Terry found on the hallway floor.

While discussing accountability during closing argument, the assistant State's Attorney stated, "[t]he law only requires that Ronald Terry and Duane Terry knew when they went out in that hall that there was a strong possibility that Timothy Davis was going to be hurt." The State then used a felony-murder example to illustrate the law of accountability. He stated, "the getaway driver in an armed robbery, where the guy goes into the bank and sticks up the teller and he kills the teller, the getaway driver is guilty of armed robbery and murder." The State's Attorney also made references to defendants' membership in the street gang. In her closing argument, the defense attorney stated that baseball fans who shout "kill the umpire" are not accountable if another fan throws a beer bottle and does kill the umpire. In rebuttal, the State's Attorney argued, "how about the two guys that run out and hold the ump and hold him while the guy with the beer bottle comes out and smashes him in the head? They are guilty of murder. That's the law in the State of Illinois."

After both sides rested, the jury was instructed, *inter alia*, on the law of murder and accountability. At issue are two instructions, which were submitted to the jury over defendants' objection. They state as follows:

"A person is responsible for the conduct of another when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of *a* crime." (Emphasis added.)

"A person commits the crime of murder when he or one for whose conduct he is responsible, kills an individual if, in performing the acts which cause the death, he, or one for whose conduct he is responsible, intends to kill or do great bodily harm to that individual; or he, or one for whose conduct he is responsible, knows that such acts will cause death to that individual; or he, or one for

whose conduct he is responsible, knows that such acts create a strong probability of death or great bodily harm to that individual."

The first instruction, regarding the law of accountability, parallels the language of Illinois Pattern Jury Instruction (IPI), Criminal, No. 5.03 (1968), except that the second to last word was changed from "the" to "a." The second instruction, the murder definition, follows the language of IPI Criminal No. 7.01 (2d ed. 1981), except that the phrase "or one for whose conduct he is responsible" was inserted before each of the state-of-mind propositions.

The appellate court found that the State proved, beyond a reasonable doubt, that defendants aided and abetted Myers in murdering Davis. But, in reversing defendants' convictions, the court held that the instruction setting forth the law of accountability was inaccurate. It reasoned, "defendants could not be found guilty of murder unless the jury was satisfied that in committing a battery on the victim, defendants had the intent to promote or facilitate the *murder* and knowingly aided or abetted Myers in committing *murder*." (Emphasis added.) (113 Ill. App. 3d 302, 305.) In light of the disposition of this issue, the appellate court did not reach defendants' other contentions.

The State maintains that the accountability instruction was proper. It contends that defendants may be held accountable for murder if the murder was committed in furtherance of the planned and intended battery. Defendants argue that the accountability instruction was erroneous because it allowed the jury to hold them accountable for murder without finding that they possessed the required intent.

Defendants were convicted of murder by accountability under section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c)), which states:

"A person is legally accountable for the conduct of another when:

***

> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

This court construed section 5—2(c) as incorporating the long-established "common-design rule." (See *People v. Kessler* (1974), 57 Ill. 2d 493, 498-99; *People v. Armstrong* (1968), 41 Ill. 2d 390, 399.) That rule provides, "where two or more persons engage in a common criminal design or agreement, any acts in the furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts." *People v. Kessler* (1974), 57 Ill. 2d 493, 496-97.

The first case to discuss the common-design rule was *Brennan v. People* (1854), 15 Ill. 511, where the court held that an accomplice can be held accountable for murder even without a showing of an intent to kill. In *Brennan*, a group of persons pursued a man named Story to a barn, where they killed him. It is not clear what events led to the murder or which person actually killed Story. In holding the defendants guilty of murder, the court stated:

> "The [defendants] may be guilty of murder, although they neither took part in the killing, nor assented to any arrangement having for its object the death of Story. It is sufficient that they combined with those committing the deed to do an unlawful act, such as to *beat* or rob Story; and that he was killed in the attempt to execute the common purpose. If several persons conspire to do an unlawful act, and death happens in the prosecution of the common object, all are alike guilty of the homicide. The act of one of them done in furtherance of the original design is, in consideration of law, the act of all. And he who advises or encourages another to do an illegal act is responsible for all the natural and probable consequences that may arise from its perpetration." (Emphasis added.) 15 Ill.

511, 516-17.

This court recently applied the common-design rule in *Kessler*, and affirmed an attempted-murder conviction even though an intent to kill was not proved. The court reasoned:

"We believe the statute, as it reads, means that where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids; and that the word 'conduct' encompasses *any* criminal act done in furtherance of the planned and intended act." (Emphasis added.) *People v. Kessler* (1974), 57 Ill. 2d 493, 497.

Here, the substantive offense which the group conspired to commit was battery. Each person therefore was responsible for the conduct of the other which was done in furtherance of the intended battery. The result of their concerted acts was murder and, under the common-design rule, all are legally accountable for that murder.

The trial court informed the jury, by its instruction, that defendants were accountable for any criminal act committed with the intent to promote or facilitate the commission of a crime. The instruction included the elements of accountability as set forth in section 5—2(c). We therefore hold that the jury was accurately instructed on the law.

Defendants argue that the common-design rule should be abolished because it creates a "misdemeanor murder rule." We agree that the rule does impose liability for murder even though a misdemeanor was originally intended. As previously noted, the underlying intent of the accountability statute was to incorporate the principle of the common-design rule. This court has consistently reiterated its support for the rule (*People v. Kessler* (1974), 57 Ill. 2d 493; *People v. Rybka* (1959), 16 Ill. 2d 394; *Hamilton v. People* (1885), 113 Ill. 34; *Brennan v. People* (1854), 15 Ill. 511), and we see no reason to depart from it at this time.

Defendants assert that the murder-definition instruction

was erroneous because the phrase "or one for whose conduct he is responsible" was inserted before each of the state-of-mind propositions. They contend that including accountability language in the murder definition emphasized and compounded the error of the accountability instruction.

In support of their argument, defendants cite the committee note to IPI Criminal No. 5.03 (2d ed. 1981), which indicates that the phrase "or one for whose conduct he is legally responsible" should be inserted before the state-of-mind propositions in "the issues instruction for the offense charged." The committee note does not state that the phrase should be included in the definition instruction as was done here.

Instructions in criminal cases must be read as a whole. "It is sufficient if the series of instructions, considered as a whole, fully and fairly announce the law applicable to the respective theories of the People and the defense." (*People v. Kolep* (1963), 29 Ill. 2d 116, 125.) In addition to the challenged definition instruction, the trial court gave IPI Criminal No. 7.02 (2d ed. 1981), which properly defined the issues that the State must prove, beyond a reasonable doubt, in a murder case. The jury was also accurately instructed on the law of accountability. When considered and read as a whole, the instructions in this case fully and adequately informed the jury of the applicable law. We agree that it was error to include the accountability language in the murder definition; however, for the reasons related above, and because the facts of this case are uncontroverted and overwhelmingly demonstrate the defendants' guilt, we hold that the instruction did not constitute reversible error.

Defendants next contend that they were deprived of a fair trial because statements made by the State during closing argument were improper. Defendants assert that the State's repeated references to their membership in the street gang were solely for the purpose of inflaming the jury. The record discloses that statements given by defend-

ants to an assistant State's Attorney on the day of their arrest were read into evidence. In those statements, defendants stated that they, together with Lash, Myers and Davis were members of the same Chicago street gang. Defense counsel made a motion *in limine* to exclude that portion of the statement and to prohibit the State from referring to defendants' gang activity. The trial court denied the motion because it found that the common membership of everyone, including the victim, was relevant.

Improper remarks made during closing argument constitute reversible error where they result in substantial prejudice to the defendant or where the statements serve no purpose except to inflame the jury. (*People v. Tiller* (1982), 94 Ill. 2d 303, 321; *People v. Baptist* (1979), 76 Ill. 2d 19, 29.) However, arguments and statements based upon the facts in evidence, or upon reasonable inferences drawn therefrom, are within the scope of proper argument. (*People v. Williams* (1967), 38 Ill. 2d 115, 125.) Since the evidence supports the State's comments regarding gang activity, we find no error.

Defendants further argue that the State's use of a felony murder example was erroneous and that comments during closing argument and rebuttal misstated the law of accountability. The record shows that the court responded to defendants' objection in each instance by admonishing the jury that "the court will instruct the jury regarding the law." Although an improper comment cannot always be remedied by an admonishment from the court (*People v. Garreau* (1963), 27 Ill. 2d 388, 391), we find that the admonishment here was sufficient to correct any alleged error. In light of our finding that the court properly instructed the jury on the law of accountability, we hold that the closing statements did not constitute error.

After our review of the record, we agree with the appellate court conclusion that there was sufficient evidence for the jury to find, beyond a reasonable doubt, that

defendants were guilty of murder. For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, dissenting:

The majority is not troubled by the prosecutor's extensive commentary concerning the defendants' common gang membership and gang activity. The reason given by the majority is that "the evidence supports the State's comments." (99 Ill. 2d at 517.) The defendants' objection, however, was not that there was no factual basis in the record for making these statements, but that the statements were irrelevant and unfairly prejudicial. Gang membership and the activities of gang members may be relevant in cases in which the crime charged has some connection with the gang, such as where the members of one gang attack or take revenge on the members of another gang as the result of gang rivalry. However, in this case the victim was a member of the same gang as his attackers, and no gang-related motive for the slaying was argued or shown. The attack appeared to be spontaneous, and based on the evidence no reason for it is readily apparent.

Knowledge that Ronald and Duane Terry were street gang members did not aid in determining the extent of their involvement in the killing. Gangs are not popular among a great many members of our society, and the very knowledge that the defendants belonged to a gang might have served the impermissible purpose of causing the jurors to fear the defendants and to seek for that reason to convict them of a more serious crime than they might otherwise have. I would remand the cause for a new trial.