THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DANIEL O'REILLY, Defendant-Appellant.

First District (4th Division)   No. 1—91—2432

Opinion filed August 5, 1993.

David S. Mejia, of Oak Park (William S. Kunstler and John L. Pacht, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb, Kenneth McCurry, and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

A jury found Daniel O'Reilly guilty of first degree murder and home invasion, both based on accountability. The trial court sentenced him to concurrent terms of 38 and 30 years in prison for each conviction. On appeal, he contends: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the court erred when it refused to instruct the jury on involuntary manslaughter; (3) the court erred when it tendered jury instructions for both felony murder and first degree murder on accountability; and (4) the court abused its discretion by sentencing him to an excessive term of 38 years. We affirm.

On the afternoon of June 15, 1989, the defendant, his girl friend Gina Tripoli, Manny Nieves, and John Schultz were at a house on 3715 N. Troy. Gina and Nieves both lived at the house. Schultz was there to exchange property he had stolen for cocaine held by the defendant and Nieves. Nieves took Schultz to his room on the second floor and showed him where he and the defendant kept drugs, jewelry, and guns. After they made the exchange they went out to a bar where they met with Carl Craig, the defendant's friend. Later that night, Schultz left. At approximately 2 a.m. the defendant, Craig, and Gina returned to the house to find that someone had stolen the drugs kept in the house. The defendant immediately suspected Schultz. He took a sawed-off shotgun, Craig took a handgun, and they went to find him. They knew Schultz lived with Robert McCormick, so they drove to McCormick's apartment at 2942 W. Belle Plaine. On the way they saw Schultz and McCormick in an alley near the apartment. The defendant and Craig stopped the truck, got out, and pointed their guns at Schultz and McCormick. McCormick asked what they were doing. McCormick and the defendant had known each other for 10 years and were friends. The defendant told McCormick he mistakenly thought they were members of a rival gang. McCormick then invited them to his apartment. Later, at trial, the defendant explained that he made up the

story about rival gang members so he could get into McCormick's apartment to look for the drugs he thought Schultz stole.

When they entered McCormick's apartment, the defendant and Craig put their guns down. All then ingested cocaine. Soon the front doorbell rang, and the defendant told McCormick it was Gina. McCormick walked with the defendant to the front door and waited while the defendant walked down the stairs and talked to Gina alone. He told Gina he thought Schultz stole his drugs. He asked her to get some help and to send them up the back stairs. Then he returned to McCormick's apartment and waited.

Twenty minutes later someone came up the back stairs, and the defendant again said it was Gina. He unlocked two locks on the back door, but had trouble with the third lock, so McCormick opened the door. Two men entered: Nieves, who had a gun, and Alex Jovanovich, Gina's grandfather. Nieves ran into the dining room and the defendant followed. The defendant pointed his gun at Schultz and told him to stand against the wall. He tried to hit Schultz with the butt of the gun but Schultz moved out of the way. Then Nieves hit Craig across the mouth with his gun. The defendant stopped Nieves and said that Craig was with them. The defendant told Schultz to get down on the floor and asked him what he had done with the defendant's stuff. Schultz said he did not take it. Nieves said, "I'll show you how to take care of this" and shot Schultz four times, killing him.

The defendant, Nieves, Craig, and Jovanovich fled the apartment together. They hid their guns in a garbage can in the alley and returned to the house on Troy. Later that night they sent someone to retrieve the guns.

A month and a half later the defendant was arrested. He made a statement and told the police where they could find his gun. He admitted he planned to tie up Schultz, take him to the house on Troy, and force him to reveal where he hid the drugs. At trial the court instructed the jury on the charges of home invasion based on accountability, first degree murder based on accountability, and felony murder based on the underlying felony of home invasion. The jury found the defendant guilty of home invasion based on accountability and first degree murder based on accountability.

On appeal the defendant argues the State failed to prove him guilty beyond a reasonable doubt. On review the question is whether or not, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. (*People v. Collins*

(1985), 106 Ill. 2d 237, 478 N.E.2d 267.) For a conviction based on accountability, the State must establish: (1) the defendant solicited, agreed, or attempted to aid another in the commission of the crime; (2) the defendant participated before or during commission of the crime; and (3) the defendant concurrently intended to promote or facilitate commission of the crime. Ill. Rev. Stat. 1991, ch. 38, par. 5—2; *People v. Carrizales* (1993), 240 Ill. App. 3d 893, 608 N.E.2d 30.

The defendant argues he is not accountable for Nieves' actions because he did not aid Nieves or ask him to shoot Schultz. He also argues he was intoxicated and so could not form the requisite intent to promote a crime.

A charge of accountability flows from the underlying crime. To convict on accountability, the prosecution must only prove the defendant had a specific intent to promote a crime, not necessarily a specific crime. Once the defendant's specific intent to aid a crime is proven, he is accountable for any crime that happens as a consequence of the intended crime. *People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746.

■ Viewing the evidence in a light most favorable to the prosecution, we find the State proved beyond a reasonable doubt that the defendant was guilty of home invasion on accountability and first degree murder on accountability.

The defendant admitted he entered McCormick's apartment to tie up Schultz and take him to the house on Troy. He intended to force Schultz to tell him where his drugs were, and he told Gina to send someone to aid him. He also admitted that when he and Craig first held Schultz and McCormick at gunpoint in the alley, he made up the story about rival gang members so McCormick would invite him into the apartment, where he could search for the drugs. This evidence shows the defendant intended to commit a crime. Further, the evidence of forethought and actions taken to set his plan in motion contradict the defendant's claim that he was too drunk and drugged to form the intent to commit a crime.

The evidence also shows the defendant assisted Nieves in the home invasion. When Nieves arrived at the apartment, the defendant told McCormick it was Gina so McCormick would open the door. Then when Nieves entered and hit Craig, the defendant aligned himself with Nieves by telling him that Craig was "with them." The defendant and Nieves both pointed their guns at Schultz, and the defendant ordered Schultz to get down on the floor. After Nieves shot Schultz, the defendant and Nieves fled the apartment

together and hid their guns in the same place. Evidence that a defendant maintained a close relationship with his accomplice after the crime is an element the court may consider in finding accountability. (*People v. Calvillo* (1988), 170 Ill. App. 3d 1070, 524 N.E.2d 1054.) Even though, as the defendant argues, he did not send for Nieves specifically and did not order him to shoot Schultz, ignorance of what might happen does not preclude accountability. *Calvillo*, 170 Ill. App. 3d at 1078, 524 N.E.2d at 1060.

The defendant further maintains his conduct was merely reckless and the evidence insufficient to make him accountable for Nieves' acts. In support he cites *People v. Mitchell* (1973), 12 Ill. App. 3d 960, 299 N.E.2d 472, where the court found insufficient evidence of accountability to prove the defendant guilty beyond a reasonable doubt. In *Mitchell* the defendant was held not accountable for the murder committed by his brother because he did not ask his brother to help him, did not assist his brother, and ran away when his brother arrived. The facts of this case are the opposite. Here, the defendant asked his girl friend to send aid, remained in the apartment when Nieves arrived, assisted Nieves by pointing his gun at Schultz, and left with Nieves after Nieves committed the murder.

■ The defendant next argues the court erred when it instructed the jury on felony murder but then refused to instruct the jury on the lesser included offense of involuntary manslaughter. He argues there was sufficient evidence introduced for the jury to find him guilty of mere reckless behavior and acquit him of the felony murder.

A defendant is entitled to instructions on lesser included offenses when a jury could rationally find him guilty of the lesser offense and acquit him of the greater. (*People v. Balls* (1981), 95 Ill. App. 3d 70, 419 N.E.2d 571.) However, an instruction on a lesser included offense is properly refused when the defendant is either guilty of the greater offense or not guilty of any offense. *People v. Moore* (1990), 206 Ill. App. 3d 769, 774, 565 N.E.2d 154, 157.

The defendant relies on *People v. Taylor* (1991), 212 Ill. App. 3d 351, 570 N.E.2d 1180. The court in *Taylor* held that the trial court erred in failing to instruct the jury on involuntary manslaughter when the defendant did not admit he committed the felony underlying the felony murder charge. The defendant was charged with felony murder after he allegedly robbed and assaulted the deceased. At trial the defendant denied he robbed the deceased. The appellate court held that the defendant was entitled to an instruction on involuntary manslaughter because the jury could have found him not

guilty of the robbery but nevertheless guilty of involuntary manslaughter based on his assault of the deceased.

The State distinguishes *Taylor* on the grounds that the defendant was tried for murder based on his own act of assault, not murder based on the act of another. We agree. In *Taylor* the defendant killed the deceased. In this case the defendant did not kill the deceased, Nieves did. It is Nieves' conduct, not the defendant's, which is relevant to the issue of murder, and Nieves clearly intended to shoot Schultz.

We find the court properly refused to instruct the jury on the lesser included offense of involuntary manslaughter because if the defendant was acquitted of felony murder, he could not be found guilty of involuntary manslaughter. It is undisputed that Nieves committed the murder. So the issue for the jury based on the instructions it received was whether the defendant: (1) committed a home invasion; (2) committed felony murder based on the home invasion; (3) assisted Nieves in committing a home invasion; (4) assisted Nieves in committing a murder; or (5) none of these. These are the only conceivable crimes the defendant could have committed. If the jury found the defendant guilty of the underlying home invasion, it could find the defendant guilty of felony murder. If the jury acquitted the defendant of home invasion, it could not find the defendant guilty of felony murder. And if the jury acquitted the defendant of felony murder, it could not then find him guilty of involuntary manslaughter, because he did not kill Schultz. The jury found the defendant guilty of home invasion and murder both based on accountability—perfectly consistent verdicts given the facts before them.

■ Next the defendant contends the court incorrectly instructed the jury on both felony murder and first degree murder based on accountability. The record shows the defendant did not object to the instruction at trial and did not include the issue in his post-trial motion. As a result, it is waived. *People v. Solis* (1991), 216 Ill. App. 3d 11, 576 N.E.2d 120.

■ Finally the defendant argues the court abused its discretion by imposing an excessive sentence. The defendant further complains that the court ignored the mitigating factors of his potential for rehabilitation, his cooperation with the authorities, and his role as a mere accomplice when it sentenced him to 38 years in prison. The sentence for first degree murder is 20 to 60 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a).) When a sentence is within the guidelines we will not reduce it unless we find the court abused its

discretion. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708.) The record shows the court recognized that the defendant was not the principal in the murder of Schultz and considered the defendant's "conduct and attitudinal changes" in sentencing. We find no abuse of discretion in the sentence of 38 years.

Affirmed.

JOHNSON and HOFFMAN, JJ., concur.