NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

                  Docket No. 77982--Agenda 3--May 1996.

       THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RONALD R.

                           ALVINE, Appellant.

                    Opinion filed September 26, 1996.

          JUSTICE MILLER delivered the opinion of the court:

          Following a jury trial in the circuit court of Du Page

County, the defendant, Ronald R. Alvine, was convicted of first

degree murder, burglary, and possession of a stolen motor vehicle.

Defendant waived his right to a jury for sentencing. At a separate

sentencing hearing the trial court found defendant eligible for the

death penalty. The trial court further determined that there were

no mitigating factors sufficient to preclude imposition of that

sentence and defendant was sentenced to death. The trial judge also

sentenced defendant to 14 years' imprisonment on the burglary and

possession of a stolen motor vehicle convictions, to run

concurrently with his death sentence. The defendant's execution has

been stayed pending direct review by this court. Ill. Const. 1970,

art. VI, §4(b); 134 Ill. 2d Rs. 603, 609(a). For the reasons that

follow, we reverse count I of defendant's murder conviction, vacate

his death sentence, and remand for a new trial. We affirm

defendant's conviction on count II, felony murder, and his

convictions and sentence for burglary and for possession of a

stolen motor vehicle.

                                   FACTS

          The present charges arose from an incident in the early

morning of April 20, 1992, in which Officer Mike Browning was

killed. At trial, Charles Pierce testified that he lived across the

street from Crossroads Chevrolet, a car dealership. Just after

midnight, Pierce witnessed a break-in at the dealership and

telephoned 911. A tape of Pierce's call to the 911 dispatcher was

played at trial. Pierce saw a white male, later identified as

defendant, inside the dealer's showroom. Pierce saw defendant enter

a Corvette, accelerate, and drive through the showroom window.

Defendant then pulled the car over to the right of the dealership

entrance gates. Defendant exited the Corvette, re-entered the

showroom, and reappeared near the Corvette after approximately one

minute. At the same time, Pierce saw a police vehicle approach and

park just past the front gate inside the entrance to the

dealership, near the Corvette and a blue Riviera. An officer exited

the police car and stood in front of his squad car, with his arms

extended and his hands clasped in front of him, facing the

Corvette.

          A second police car arrived and parked just outside the

entrance gate. The sole occupant of the second squad car, later

identified as the victim, Mike Browning, exited. Browning stood

beside his squad car with his arms extended and his hands clasped,

as if holding a gun. Pierce then saw defendant jump into the

Corvette and accelerate, driving towards Browning. The Corvette

struck Browning and his squad car. After striking Browning's car,

the Corvette swung to the right and spun out into the street.

          Donald Reever, a West Chicago policeman, testified that

he was the first officer to arrive at the scene. Reever pulled into

the well-lighted parking lot through the open entrance gate. After

he arrived, he saw a blue vehicle backing up near the used-car

section of the lot. The blue vehicle struck a parked car.

          Reever observed defendant sitting in the driver's seat of

the blue car. Reever then opened the door of his car, drew his gun,

and leaned out of the door with his gun resting on the spotlight

attached to his car. In compliance with Reever's order, defendant

exited the blue car. About the same time, Reever heard Browning

state over the radio that he had arrived at the scene, and Reever

saw Browning's squad car pull up behind him and a little to the

left.

          As Browning's squad car pulled behind Reever, defendant

was walking toward the front of the blue car. Reever again told

defendant to put his hands up in the air, but defendant began to

step to Reever's left. Defendant then ran and jumped into the

Corvette. The Corvette accelerated quickly. Reever stepped back to

get out of the way, and unsuccessfully attempted to grab defendant

with his left hand. Reever turned around and saw Browning standing

in front of his squad car at the front entrance to the dealership

lot.

          As the Corvette continued to accelerate, it drove

directly at Browning. Reever did not see any brake lights, and the

acceleration continued. Reever yelled to Browning to get out of the

way. According to Reever, Browning was struck by the front end of

the Corvette and was hurled up into the windshield of the car.

Browning rolled over the hood onto the passenger side of the

vehicle, and onto the ground. The Corvette then hit Browning's

squad car, turned westbound onto the highway in front of the

dealership, and spun around on the wet pavement.

          Browning sustained fatal head injuries, including

multiple skull fractures. He was pronounced dead at 4:20 a.m. on

April 20. Dr. Deborah Kay, a pathologist, testified that death was

caused by multiple blunt force injuries and extensive injuries to

the head.

          Paramedic John Niemann treated defendant at the crime

scene. Defendant had an observable fracture to his left thigh,

which was later discovered to have resulted from a bullet.

Defendant was alert and oriented and responded appropriately to

questions. As defendant was being lifted into the ambulance,

paramedics asked him what had occurred. Defendant stated that "he

got in my way and I just put my foot to the floor." Niemann

testified that defendant was laughing while he made the statement.

Niemann did not smell alcohol on defendant's breath. Niemann also

stated that defendant was smirking inappropriately at other times

during the conversation.

          Paramedic Michael Eckler also treated defendant at the

scene on the night of the offenses. When Eckler arrived there he

found defendant lying on his back, handcuffed, next to a white

Corvette. Defendant was conscious and answered questions

appropriately. Defendant told Eckler that he had been drinking, and

Eckler smelled a moderate amount of alcohol on defendant's breath.

          Joseph Boyle, a physician at Central Du Page Hospital,

treated defendant in the early morning hours of April 20, 1992.

Defendant's condition was stable, and he had a gunshot wound to the

left thigh. A routine blood test for the presence of narcotics or

alcohol revealed that defendant's blood-alcohol level was 0.17.

          Frances Culler, head nurse of the emergency room at

Central Du Page Hospital, also examined defendant. Culler testified

that defendant was alert and responsive. She did not observe overt

signs of alcohol and did not recall if she detected an odor of

alcohol on defendant's breath.

          Val Blazic, a deputy sheriff, guarded defendant at the

hospital. From his position outside defendant's room, Blazic

overheard defendant tell his sister over the telephone, "I had to

kill the son of a bitch. I had to or he would have killed me. You

would think he would have shot out one of the tires instead of

shooting me."

          Patricia McKinstry, a physical therapist, treated

defendant while he was a patient at Central Du Page Hospital.

Defendant told McKinstry that he had stolen a car or a convertible

and that "the damn cop got in front of me. Shot me in the *** leg."

Defendant related to McKinstry that his sister had telephoned him

and that she said two police officers had been killed. Defendant

told McKinstry that he did not kill two of them, he only "got one."

          Conflicting evidence of whether or not police weapons had

been fired at the scene was presented. Detective Raymond Rodriquez

testified that when Officer Browning's gun was recovered from the

ground at the crime scene it contained the maximum number of

cartridges in the magazine. The weapon also contained a discharged

cartridge casing caught abnormally in the ejection port. Rodriquez

believed that the gun had discharged abnormally due to an improper

grip on the weapon. Officer Reever testified that he never fired

his gun on the evening of the offenses. Officer Laz Perez, who

examined Reever's gun after the incident, testified that he

received the weapon fully loaded and he did not find powder burns

in the chamber. However, Richard Vaughn, a forensic sergeant,

examined the same weapon two days later and, using an eye glass and

a light, observed a substance in the barrel that appeared to be gun

powder residue. Reever testified in rebuttal that he last fired his

gun approximately six weeks earlier. He used the gun to destroy a

deer injured in a traffic accident. Reever stated that although

proper police procedure requires that the gun be cleaned after each

use, Reever did not clean his gun after shooting the deer.

          Robert Schoenthaler, co-owner of Crossroads Chevrolet,

testified that defendant had no authority to enter Crossroads

Chevrolet or to remove a 1992 Corvette from the premises.

          For the defense, Mary Alvine testified that she is

defendant's youngest sister. On April 24, 1992, Mary spoke with

defendant by telephone. Defendant told her that he crashed and that

he was ducking from bullets that were flying up above his head and

through the windshield. Defendant told his sister that because he

was ducking down, he did not see the officer before he hit him.

Mary Alvine denied that defendant had said he had to "kill the son-

of-a-bitch." During cross-examination she admitted that defendant

told her he broke into the dealership to steal a Corvette.

          The defense presented the testimony of Gary W. Cooper, an

accident investigator. Cooper's testimony consisted of his

observations of markings on and damage to the Corvette defendant

drove, Browning's squad car, and the steel gate at the dealership

entrance.

          Defendant did not testify on his own behalf.

          At the close of evidence, the jury returned verdicts

finding defendant guilty of both knowing murder and felony murder

in addition to burglary and possession of a stolen motor vehicle.

          Following the verdicts, the defense moved for a hearing

regarding defendant's fitness for sentencing. The court found a

bona fide doubt of defendant's fitness existed and ordered

defendant to be examined. Following a hearing, the judge found

defendant fit to be sentenced.

          Defendant waived his right to a jury for sentencing and

the case proceeded to a bench sentencing. At the first stage of the

sentencing hearing, the judge found that defendant was 18 or older

at the time of the murder for which he was convicted. The judge

further found that defendant was eligible for the death penalty

based on the statutory aggravating factors of murder in the course

of a felony (Ill. Rev. Stat. 1991, ch. 38, par. 9--1(b)(6)) and

knowing murder of a policeman in the course of his official duties

(Ill. Rev. Stat. 1991, ch. 38, par. 9--1(b)(1)).

          The sentencing hearing then progressed to the aggravation

and mitigation phase. The State presented evidence of defendant's

prior convictions for two separate burglaries, unlawful use of a

weapon by a felon, forgery, involuntary manslaughter and arson.

Defendant presented the testimony of his relatives, a mitigation

expert and a psychiatrist.

          At the conclusion of the evidence in aggravation and

mitigation the judge gave a detailed ruling and found that the

mitigating factors were insufficient to preclude the imposition of

the death sentence. Defendant was sentenced to death on the knowing

murder count.

                                 ANALYSIS

          The defendant raises a number of issues concerning both

the guilt-innocence phase of the proceedings and the sentencing

hearing. However, due to our disposition of defendant's first issue

on appeal, we need address only those claims concerning the guilt-

innocence phase of trial.

          The first issue we address is whether defendant's

conviction on count I, for knowing murder, must be reversed because

of language added to the pattern jury instructions.

          Defendant was indicted for intentional, knowing and

felony murder. Ill. Rev. Stat. 1991, ch. 38, pars. 9--1(a)(1),

(a)(2), (a)(3). The State nol-prossed the intentional murder count

and proceeded to trial on the knowing and felony murder counts.

          At the close of evidence in the guilt phase of trial,

defendant asserted that he was entitled to argue that he was

fleeing to get out of the line of police fire at the time of

Officer Browning's death. Defendant contended there was evidence

that he had sustained a gunshot wound during the incident and that

both officers' guns had been fired. Defendant argued that based on

this evidence it was possible that he had been shot before he

entered the Corvette, supporting his argument that he fled in

response to an excessive use of force. Defendant also stated that

based on the evidence presented of his blood-alcohol level at the

time of the offense, the jury should be allowed to consider whether

his actions were reckless or if he knew that his acts created a

strong probability of death or great bodily harm.

          We note that during closing arguments defendant contended

that evidence showed that he had been shot before he entered the

Corvette, and in the process of fleeing, struck the tubular steel

gate at the entrance to the dealership. Defendant further argued

that Officer Browning's fatal head injuries were not the result of

being struck by the vehicle, but by the steel gate.

          Based on this theory of the case, the defense sought jury

instructions on self-defense and on the lesser offenses of second

degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9--2) and

reckless homicide (Ill. Rev. Stat. 1991, ch. 38, par. 9--3(a)).

          The trial court ruled that defendant could rely on a

theory of self-defense and could argue that he was guilty of one of

the lesser offenses, second degree murder or reckless homicide, but

only as to count I, the knowing murder charge (Ill. Rev. Stat.

1991, ch. 38, par. 9--1(a)(1)). The judge ruled that it was

improper to instruct the jury on self-defense or lesser offenses

for count II, the felony-murder charge (Ill. Rev. Stat. 1991, ch.

38, par. 9--1(a)(2)).

          The parties discussed how to present the instructions so

that the jury would understand which instructions applied to the

appropriate murder count. The defense tendered a set of pattern

instructions, but the judge rejected them because he did not

believe they adequately differentiated between the two murder

charges. The State submitted a set of instructions with the phrase

"Strong probability of bodily harm" placed as a subheading or as a

parenthetical within the text of those instructions pertaining to

count I. For those instructions pertaining to count II, the phrase

"Felony Murder" appeared as a subheading. Except for the

subheadings and parenthetical phrase, the instructions mirrored the

pattern jury instructions.

          The defense objected to the State's instructions on count

I, arguing that the use of parenthetical language was not

recommended in the pattern instructions. Over defendant's

objection, the judge allowed the instructions tendered by the

State.

          After the judge gave the instructions, the jurors retired

to deliberate. The jurors deliberated from afternoon until 10

o'clock that night. The next morning they sent the judge a note

asking if there was a time limit on their deliberations. They also

asked the judge if there was some legal action he would take if

they were unable to reach a verdict. After consultation with both

parties, the judge told the jurors there was no time limit and

asked them to continue their deliberations.

          Approximately 1½ hours later, the jurors sent another

note to the judge. The note read:

                    "We are having a problem in only one area of

               deliberation. The page of instructions that

               explains `A person acts knowingly ...' is not clear

               to us. Can you explain it to us in plain English.

               This is very important to our deliberation for the

               following reason:

                    In the document of Jury instructions it states

               only once `... HE KNEW THAT HIS ACTS created a

               strong probability of great bodily harm.'

                    In all other sections of the document

               regarding the language of bodily harm it states:

                    `Under the law, a person charged with first

               degree murder (strong probability of great bodily

               harm) may be ...' No mention is made of `he knew

               his act ...'

                    Is the standard of the law: `strong

               probability of great bodily harm' or `he KNEW that

               his acts created a strong probability of great

               bodily harm.'

                    Please help us with this technical matter.

                    Sincerely,

                    Foreman" (Emphasis in original.)

          The trial judge consulted with the parties to formulate

a response, but before an answer was agreed on, the jury returned

a verdict finding defendant guilty on all counts.

          Defendant claims that the jury instructions on count I

were internally contradictory and confused the jury. He argues that

the effect of the erroneous instructions was that he was deprived

of his constitutional right to a fair trial. U.S. Const., amends.

VI, XIV; Ill. Const. 1970, art. I, §§2, 8.

          We first address the State's argument that defendant has

waived this issue. As part of his claim, defendant contends that

the trial judge should have given Illinois Pattern Jury

Instructions, Criminal, No. 7.01X (3d ed. 1992) (hereinafter IPI

Criminal 3d No. 7.01X) instead of using the subheadings and the

parenthetical language. IPI Criminal 3d No. 7.01X is specifically

designed for those cases, like this one, in which a defendant is

charged with more than one murder count, one of which is felony

murder, and where the court will also be giving second degree

murder instructions that will apply to murder counts other than

felony murder. IPI Criminal 3d No. 7.01X, Committee Note. IPI

Criminal 3d No. 7.01X instructs the jury that the judge will use

the terms "Type A" and "Type B" to distinguish between "different

kinds of first degree murder."

          Although defendant raises this argument on appeal, he did

not tender IPI Criminal 3d No. 7.01X at trial. It is well

established that a party may not raise on appeal the failure to

give an instruction unless the instruction was tendered at trial.

People v. Tannenbaum, 82 Ill. 2d 177, 180 (1980). Accordingly,

defendant has waived the argument that the court should have given

IPI Criminal 3d No. 7.01X.

          Defendant has not waived his general challenge to those

jury instructions that included the differentiating language. At

trial, defendant properly objected to inclusion of the

parenthetical information in the jury instructions for count I.

Defense counsel also tendered a set of instructions without the

subheadings and parenthetical phrases. This issue was also raised

in defendant's post-trial motion. Therefore, defendant has

preserved the general issue for review.

          Defendant's substantive argument regarding the jury

instructions focuses on the content of the phrase used to

differentiate between the two murder counts. The challenged

language appeared in the text or headings of some nine different

instructions. Defendant points out that the phrase "Strong

probability of bodily harm" is an incomplete statement of the

mental state necessary for a finding of guilty of "knowing" first

degree murder. Ill. Rev. Stat. 1991, ch. 38, par. 9--1(a)(2). In

contrast to the phrase "strong probability of bodily harm" employed

here in the text or headings of some nine different instructions to

differentiate between the two murder counts, the first degree

murder statutes states that:

                    "A person who kills an individual without

               lawful justification commits first degree murder

               if, in performing the acts which cause the death:

                              ***

                              he knows that such acts create a

                    strong probability of death or great bodily

                    harm to that individual or another." Ill. Rev.

                    Stat. 1991, ch. 38, par. 9--1(a)(2).

          Although the supplemental language omitted any mention of

the requisite mental state, the text of both the definitional and

the issues instructions for count I properly explained the mental

state requisite for a finding of guilty. Defendant argues that

because the knowledge element described in the body of the

instruction conflicted with the wording of the subheadings and

parenthetical phrases, the jurors could have convicted him on count

I if they believed the State had proven his acts created a

substantial risk of death or great bodily harm, without regard to

his mental state.

          Defendant relies on People v. Jenkins, 69 Ill. 2d 61

(1977), and People v. Haywood, 82 Ill. 2d 540 (1980), to support

his claim of reversible error. In Jenkins, during a trial for

attempted murder a central issue was whether the level of the force

defendant used was justified. The judge in Jenkins instructed the

jury that it should find against the defendant on the attempted

murder count if the defendant performed an act that constituted a

substantial step towards the commission of the crime of murder. The

instruction omitted any reference to the fact that defendant must

not have been justified in using the force he employed. A separate

jury instruction properly stated the law, including that defendant

must not have been justified in using the force that he employed.

This court held that the instructions were contradictory and

inconsistent, and that the giving of contradictory instructions on

an essential element in the case was prejudicial error. Jenkins, 69

Ill. 2d at 66.

          Similarly, in People v. Haywood, 82 Ill. 2d 540, 545

(1980), the trial court gave two instructions on the defense of

voluntary intoxication. The first instruction, a pattern

instruction, stated that "an intoxicated person is criminally

responsible for his conduct unless his intoxication renders him

incapable of acting knowingly and intentionally." A second, non-IPI

instruction told the jury that intoxication would not be a defense

unless it rendered defendant "incapable of any mental action."

Haywood, 82 Ill. 2d at 544. Citing Jenkins, this court held that

when conflicting instructions are given, one of which is a correct

statement of law and the other is an incorrect statement of law,

the error is reversible and not harmless. Haywood, 82 Ill. 2d at

545.

          The State argues that the instant case is distinguished

from the facts in Jenkins and Haywood because the instructions were

not contradictory. The State maintains the supplemental language

was a mere label intended to help the jurors to differentiate

between the first degree murder counts.

          We agree with the State's position that, in contrast to

the facts in Jenkins and Haywood, these jury instructions did not

facially present conflicting accounts of the law. The definitional

and issues instructions contained all of the necessary elements and

were, by themselves, correct legal statements. We also believe that

it was not improper to use supplemental language to convey to the

jury that the instructions for self-defense and second degree

murder applied only to count I.

          Nonetheless, jury instructions should not be misleading

or confusing. People v. Bush, 157 Ill. 2d 248, 254 (1993). Here,

the insertion of supplemental language that contained only a

partial description of a key element of the offense allowed the

possibility that the jury would be confused or misled regarding the

mental state necessary for a conviction on count I.

          In this case, we are not limited to an abstract analysis

of whether or not the inclusion of this supplemental language

confused the jurors. The first note from the jury to the court

indicated some difficulty in reaching a verdict. The second note

from the jurors informed the court that the jury was confused on

the question whether a knowing mental state was required for a

finding of guilty. Although the text of some of the instructions

contained complete statements of the law, the effect of the

inserted language was that the jurors were demonstrably confused on

this key issue. The jurors found one correct description of the

mental state for the offense yet were apparently confused by the

repeated references to the shorthand description of the offense.

          The State argues that even though the jurors stated they

were uncertain whether or not a knowing mental state was required,

the jury's subsequent verdict on count I is valid and should not be

reversed. The State argues that it is more likely than not that the

jury cured any possible confusion by referring to the text of the

definitional and issues instructions. Moreover, the State notes

that both parties in their closing arguments informed the jury that

knowledge was a key element of the count I charge.

          We cannot adopt the State's reasoning on this point.

While this court has previously held that jury instructions should

be considered as a whole and not in isolation (People v. Terry, 99

Ill. 2d 508, 516 (1984)), this proposition rests on the assumption

that the jury instructions clearly and properly inform the jurors

of the law. Terry, 99 Ill. 2d at 516; see also People v. Kolep, 29

Ill. 2d 116, 125 (1963). But when inconsistent instructions are

presented to a jury, the jury's ability to perform its function is

inhibited because the jury has not been adequately apprised of the

law to be applied. Haywood, 82 Ill. 2d at 545; Jenkins, 69 Ill. 2d

at 66. When the instructions are confusing and create a situation

in which the jurors believe they are forced to choose between

conflicting elements within the instructions, as here, the

instructions as a whole cannot be considered curative of the

confusion. Jenkins, 69 Ill. 2d at 66-67.

           In this case, the jury was led to choose between the

standard of "knowing his action caused a substantial risk of bodily

harm" and the mere existence of a "substantial risk of bodily

harm." It is clear that faced with the confusion regarding this

element, the jury resolved the dilemma before reaching a verdict.

Given the jury's note to the judge, and the absence of any

clarifying instruction, we cannot assume that the jurors based

their verdict on a proper statement of the law.

          We also reject the State's argument that the

instructional error is harmless. An error in a jury instruction is

harmless if the result of the trial would not have been different

if a proper instruction had been given. People v. Lovelace, 251

Ill. App. 3d 607, 620 (1993). Here, where the jury was given

instructions that caused confusion on the key element of

defendant's mental state at the time of the offense, we cannot say

the error is harmless. The jury may well have decided that a strong

probability of bodily harm existed, but may not have decided

whether defendant knew that his acts created a strong probability

of bodily harm or death. Accordingly, we reverse his conviction on

count I.

          The jury returned a separate verdict form finding the

defendant guilty of count II, felony murder, and we next consider

the effect on this additional conviction of our reversal of count

I. The judge instructed the jurors that to sustain the charge of

felony murder the State must prove that the defendant performed the

acts that caused the death of the victim and that, when defendant

did so, he was committing the offense of burglary. Ill. Rev. Stat.

1991, ch. 38, par. 9--1(a)(3); IPI Criminal 3d No. 7.01. The only

language added to the pattern instructions was the phrase "felony

murder," which was used as a heading and a parenthetical to

distinguish count II from count I.

          We believe that defendant's separate conviction on count

II, felony murder, may stand. The statute does not require a

finding of a particular mental state for a guilty verdict on a

charge of felony murder. Additionally, the instructions used in

this case accurately described the elements of the offense, and the

jury had no question regarding this count. Finally, as noted above,

the jury returned a separate verdict form finding defendant guilty

of the felony murder and burglary charges. Therefore, defendant's

conviction on count II, felony murder, is not affected by the

reversal of his conviction on count I.

          We next address defendant's remaining claims arising from

the guilt-innocence phase of trial. Defendant argues that numerous

remarks made by the prosecutor during the guilt phase of the trial

improperly deprived him of a fair trial and warrant reversal of his

convictions.

          In her rebuttal closing argument, the prosecutor made an

analogy linking the role of the victim and his support of another

officer at the crime scene to the role of the jury in reaching a

verdict. The prosecutor first noted that the victim had arrived at

the scene as Officer Reever's backup. She then stated:

               "You are Mike Browning's backup. When Mike got out

               to that scene the only thing that stood between the

               defendant and his freedom was Mike Browning, and

               today, Ladies and Gentlemen, the only thing that

               stands between this defendant and walking out the

               door is you. You are Mike Browning's backup."

Defendant claims this comment invited the jurors to identify with

the victim and inflamed the passions of the jury against the

defendant. However, defendant did not object to the challenged

remark at trial and we therefore consider the issue waived. People

v. Mahaffey, 166 Ill. 2d 1, 27 (1995).

          Defendant acknowledges that he did not object to the

remark at trial, but argues that the complained-of remark

constitutes plain error. Although issues not properly preserved may

be considered on review under the doctrine of plain error, we do

not believe that the plain error doctrine will defeat the waiver

here. 134 Ill. 2d R. 615(a). Plain error may be invoked in criminal

cases where the evidence was closely balanced or the error was of

such magnitude that the accused was denied a fair trial. People v.

Bean, 137 Ill. 2d 65, 80 (1990). Neither element has been satisfied

in the case before us. The prosecutor presented overwhelming

evidence of defendant's guilt, including a 911 tape of an

eyewitness account, testimony of the officer at the scene and

defendant's statements to medical personnel that he had killed a

police officer.

          Further, we do not believe that the alleged error

deprived defendant of a fair trial. Prosecutors are afforded wide

latitude in closing argument. People v. Thompkins, 121 Ill. 2d 401,

445 (1988). The prosecutor's closing argument properly focused on

the testimony of the witnesses and the facts of the case. Moreover,

the court instructed the jurors orally and in writing that the

attorneys' arguments were not evidence that could be considered in

their deliberations. The complained-of comment occurred at the end

of the rebuttal argument and was a part of the prosecutor's pleas

to the jurors for a guilty verdict. Considered in the context of

the closing remarks as a whole (People v. Wiley, 165 Ill. 2d 259,

295 (1995)), we do not believe that this isolated comment

prejudiced the outcome of defendant's trial.

          Defendant also suggests that he received ineffective

assistance of counsel in violation of his sixth and fourteenth

amendment rights (U.S. Const., amends. VI, XIV) because his counsel

did not object at trial to the "backup" remark. Claims of

ineffective assistance of counsel are analyzed under the two-prong

test established in Strickland v. Washington, 466 U.S. 668, 80 L.

Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by this court in

People v. Albanese, 104 Ill. 2d 504, 525-26 (1984). To succeed on

a claim of ineffective assistance of counsel, a defendant must

prove that his attorney's performance fell below the objective

standard of reasonableness, as measured by reference to prevailing

professional norms, and that the substandard representation so

prejudiced defendant that there is a reasonable probability that,

without the errors, the outcome would have been different.

Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at

2064. A reviewing court "need not determine whether counsel's

performance was deficient before examining the prejudice suffered

by the defendant as a result of the alleged deficiencies."

Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at

2069.

          In the present case, we find that even if trial counsel's

performance was deficient as defendant alleges, it did not

prejudice defendant. The State presented extensive evidence of

defendant's guilt, including, as noted earlier, defendant's

statements to witnesses and eyewitness accounts of the events. We

therefore believe that trial counsel's failure to object to the

challenged remarks did not influence the outcome of defendant's

trial. Accordingly, we reject defendant's claim of ineffective

assistance of counsel.

          Defendant next challenges another prosecutorial remark

during rebuttal. In an attempt to contrast the lives and choices of

the victim and defendant, the prosecutor described the victim's

preparations for work on the night he was killed. The prosecutor

then stated that on the same night defendant was

               "[a]lso getting ready for work. His work is

               burglary and he puts on his uniform. He puts on his

               black pants, his black shirt, his black sweatshirt,

               his black jacket. He is ready to go to work."

Defendant alleges that these remarks could only be interpreted as

informing the jury that defendant was a professional burglar,

implicitly suggesting that he had committed other unrelated

burglaries. Defendant further contends that the remarks allowed the

jurors to reach a verdict based on evidence outside the record.

          Defendant did not object to the challenged remark at

trial, and therefore he has waived his claim on this issue.

Mahaffey, 166 Ill. 2d at 27. We also believe that the alleged

improper remark does not constitute plain error. As noted, the

prosecution presented substantial evidence of defendant's guilt.

Moreover, our review of the remarks indicates that the comments

would not have deprived defendant of a fair trial. People v.

Carlson, 79 Ill. 2d 564, 576-77 (1980). When considered in context,

it is reasonable to assume that the prosecutor's description of

defendant's attire was intended to support the conclusion that

defendant planned and prepared to steal the Corvette from the

dealership. Evidence presented to the jury included descriptions of

defendant's clothing at the time of the murder and after he was

taken into custody.

          Defendant also claims that his counsel's failure to

object to the comment was ineffective assistance of counsel. As

previously noted, we do not find that the remark was improper.

Accordingly, trial counsel's performance was not deficient.

          Defendant next argues that error occurred when the State

commented on defendant's nontestimonial in-court demeanor. In her

rebuttal argument, the prosecutor contrasted defendant's life with

that of the victim's. At the end of her argument, the prosecutor

stated that, in contrast to the plight of the victim, "here we are

20 months later and the defendant sits here in court amused by

everything that happened." Defense counsel objected to the comment,

and the trial judge sustained the objection.

          Despite defendant's objection at trial, he did not raise

the issue in his post-trial motion, and accordingly he has failed

to preserve the issue for review. People v. Enoch, 122 Ill. 2d 176,

186 (1988). Defendant argues, however, that the waiver rule

expressed in Enoch does not apply to the instant case because the

basis for his objection at trial was a violation of his rights

under the fifth amendment. U.S. Const., amend. V.; Enoch, 122 Ill.

2d at 190.

          We need not decide whether defendant avoids the

procedural bar. Generally, the prompt sustaining of an objection by

a trial judge is sufficient to cure any error in a question or

answer before the jury (People v. Hobley, 159 Ill. 2d 272, 315

(1994); People v. Baptist, 76 Ill. 2d 19, 30 (1979)), and we

believe that the same is true here. The trial judge promptly cured

any prejudicial impact by sustaining the defendant's objection and

ordering the comment stricken. People v. Enis, 163 Ill. 2d 367, 409

(1994). The court also instructed the jury that closing arguments

were not evidence. People v. Hooper, 133 Ill. 2d 469, 488 (1989).

Thus, any arguable error in the prosecutor's comments was cured by

the judge's actions. People v. Morgan, 142 Ill. 2d 410, 454 (1991).

          Defendant next contends that the cumulative effect of the

allegedly improper prosecutorial comments denied him a fair trial

and warrants reversal of his convictions. Having found no errors,

we must reject defendant's contention.

          Defendant next argues that the jury instructions on the

possession of a stolen motor vehicle count were insufficient and

constituted reversible error.

          At the close of the guilt phase of defendant's trial, in

addition to defendant's convictions for murder and burglary, the

jury also returned a verdict of guilty on the charge of unlawful

possession of a stolen motor vehicle. Ill. Rev. Stat. 1991, ch.

95½, par. 4--103(a)(1). To sustain a conviction on a charge of

possession of a stolen motor vehicle, the State must prove that the

defendant possessed the vehicle; that he was not entitled to

possession of the vehicle; and that the defendant knew that the

vehicle was stolen. Illinois Pattern Jury Instructions, Criminal,

No. 23.36 (3d ed. 1992). Therefore, the defendant argues, to prove

that he knew the vehicle to be stolen, the State would first have

to prove that defendant had stolen the car, including the intent to

permanently deprive the owner of use of the vehicle. Accordingly,

defendant claims that the trial judge erred when he did not

instruct the jury on this element of the State's burden of proof.

          However, as the State notes, defendant has waived this

contention because he did not offer an instruction on the element

of permanent deprivation at trial. As this court has previously

held, a party may not raise on appeal the failure to give an

instruction unless the instruction was tendered at trial.

Tannenbaum, 82 Ill. 2d at 180. Waiver is also appropriate here

because defendant failed to include this claim in his post-trial

motions. Enoch, 122 Ill. 2d at 186.

          Under an exception to the waiver rule, substantial

defects in instructions are not waived by failure to make timely

objections thereto, if the interests of justice so require. 134

Ill. 2d R. 451(c). The plain error rule applies when the evidence

is closely balanced or when the error is of such magnitude that it

deprives the defendant of a fair trial. Carlson, 79 Ill. 2d at 576-

77.

          We do not believe that the alleged deficiency in the

instructions rises to the level of plain error. The evidence on

this issue was not closely balanced, nor is the claimed error of

such magnitude that it deprived defendant of a fair trial. People

v. Fields, 135 Ill. 2d 18, 60 (1990). Consequently, defendant has

waived this claim.

          Defendant further argues that counsel's failure to offer

the correct instruction or object to the instructions given at

trial on this issue constituted ineffective assistance. As we have

noted above, to prevail on a claim of ineffective assistance of

counsel, defendant must prove both that his counsel's actions were

deficient and that he was prejudiced. Strickland, 466 U.S. at 687,

80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

          Defendant's claim of ineffective assistance is without

merit. First, defendant fails to establish that he was entitled to

have the jury instructed in this manner. The lower court cases

defendant relies on are factually distinguishable. Unlike the cases

defendant cites, here there was no evidence to support a theory

that the car was not stolen or that defendant only intended to keep

the car temporarily. Accordingly, we cannot say defense counsel was

deficient for failing to request an instruction on the State's

burden of proof.

          Even if we believed that counsel was deficient in failing

to tender the instruction at issue, defendant does not prove

prejudice. There was ample evidence to conclude that defendant

stole the car. The jury heard defendant's sister's testimony that

he told her that he broke into the dealership to steal a Corvette.

Defendant's physical therapist also testified that defendant told

her he had stolen a car. Therefore, we reject defendant's claim of

ineffective assistance of counsel.

          As a result of our disposition of this case, we need not

consider issues presented in this appeal that pertain to the

sentencing phase of the trial. With respect to the first degree

murder convictions, the trial judge sentenced defendant on count I

and not on count II, felony murder. Accordingly, on remand,

defendant may be sentenced on the felony murder count. We also note

that defendant has not challenged the sufficiency of the evidence

of his guilt, and we find that evidence sufficient to support the

guilty verdicts. Consequently, there is no double jeopardy

impediment to a new trial on count I. People v. Brown, 169 Ill. 2d

132, 169 (1996); People v. Porter, 168 Ill. 2d 201, 215 (1995).

                                CONCLUSION

          For the reasons stated, defendant's conviction on count

I is reversed, his death sentence is vacated, and the cause is

remanded to the circuit court of Du Page County for a new trial.

The judgment entered on the jury's verdict on count II is affirmed.

Defendant's convictions for burglary and for unlawful possession of

a motor vehicle and corresponding sentence of 14 years'

imprisonment are affirmed.

Convictions affirmed in part

                                                     and vacated in part;

                                                  death sentence vacated;

                                                            cause remanded.