THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHNNY MOORE *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 1—88—2181, 1—88—2556 cons.

Opinion filed November 30, 1990.

Randolph N. Stone, Public Defender, of Chicago (Julie M. Campbell and James H. Reddy, Assistant Public Defenders, of counsel), for appellants.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Margaret Iwerebon, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Following a consolidated jury trial, defendants Johnny Moore and David Jackson were found guilty of residential burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—3) and possession of burglary tools (Ill. Rev. Stat. 1987, ch. 38, par. 19—2) and each was sentenced to the Illinois Department of Corrections. Both defendants appeal their convictions; Jackson appeals his four-year sentence and the denial of his request for rehabilitative drug treatment. The issues raised on appeal are: (1) whether the evidence was sufficient to prove defendants guilty beyond a reasonable doubt of burglarizing a "dwelling"; (2) whether the circuit court erred in refusing to instruct the jury on the lesser included offenses of burglary and criminal trespass to a residence; and (3) whether the circuit court erred in sentencing Jackson to a term of years in the Illinois Department of Corrections rather than granting him rehabilitative drug treatment.

On October 10, 1987, Chicago police officers Michael Pelka and Thomas Moore were on routine patrol. At approximately 5 a.m., while patrolling the 11000 block of South Parnell, they approached the house at 11014 S. Parnell and noticed a van on the lawn, backed up to the front door with its two rear doors wide open. Two men, later identified

as defendants, were coming through the front door of the house carrying a large refrigerator. Upon seeing the officers, defendants immediately dropped the refrigerator, jumped off the porch, and ran south down Parnell. Officer Moore left the squad car to pursue on foot while Pelka pursued in the squad car.

Both defendants ran between two houses and into the alley behind the houses. Once in the alley, Jackson ran south while defendant Moore ran north. Officer Moore, who ran north after defendant Moore, identified himself as a police officer and shouted to defendant Moore to stop; however, defendant Moore continued to flee.

Pelka drove the squad car to the end of the block, parked in the alley, and ran north up the alley. He saw Jackson running in the alley and ran after him, eventually apprehending him. After handcuffing Jackson, Pelka searched him and found a screw driver and pliers in his back pocket.

Meanwhile, defendant Moore had run back to the house at 11014 S. Parnell and had jumped into the van in front of the house. Officer Moore and Sonya Haddad, another officer who had arrived at the scene, ran up to the driver's side of the van and yelled to defendant Moore to get out of the van. Defendant Moore, however, started the van and attempted to drive away. When both officers drew their revolvers, defendant Moore stopped the van and he was arrested.

In 1987, the home at 11014 S. Parnell was occupied by Terrence Lowe, who had lived in the house with his parents and sister from 1971 until 1979, when his parents moved to Mississippi. Lowe continued to live in the house from 1979 until 1987. Although the home was owned by Lowe's father, Terrence Lowe paid the mortgage and all the utility bills.

In September 1987, Terrence Lowe travelled to Mississippi to look for a job and to visit his parents. The house at 11014 S. Parnell was fully furnished when Lowe left for Mississippi; however, the electricity, gas, and telephone service were all disconnected before he left.

Lowe returned to Chicago on October 9, 1987, and drove directly to his sister's house in Markham, Illinois. Later that evening, he drove by the house at 11014 S. Parnell. After satisfying himself that the house looked secure, he drove back to his sister's house.

The next day, Lowe returned to his house at approximately 7:30 a.m. and noticed that the front door was open and that his refrigerator was lying on its side on the front porch. Lowe immediately walked to the side of his house and saw that the kitchen windows and the doors to the basement and the back porch were also open. When he entered the house, he saw that most of his furniture had been moved to the front

room and that several items were missing; the dining room set, bar stools, stereo, and lamps were gone. Shortly thereafter, a police officer arrived to inform him of the burglary and the arrests that had taken place that morning.

At trial, Lowe stated that he knew neither defendant and he did not authorize either of them to enter his home. Lowe further testified that while in Mississippi he intended to return to his house in Chicago. Moreover, after returning to Chicago, Lowe moved back into his house and lived there for approximately one month before selling it.

At the close of the evidence, both defendants requested a jury instruction for the lesser included offenses of burglary and criminal trespass to a residence. The circuit court denied their request, stating that the evidence was uncontradicted that the house was a "residence." The court then instructed the jury on the charges of residential burglary and possession of burglary tools. The jury found defendants guilty of both charges.

At the sentencing hearing, the circuit court denied Moore's request for drug treatment evaluation because he was on parole for armed robbery and was thus ineligible for the treatment alternative. Jackson, on the other hand, was eligible for rehabilitative treatment, but the circuit court denied his request, stating:

"The Court is *** faced with the question of whether it's in the public's interest to grant this defendant Probation in view of the fact that a jury has found him guilty of the offense that requires a mandatory prison sentence.

This Court feels that a deferred judgement is not appropriate in this case. The Court is not opposed to giving him TASC along with Probation and 6 months in the House of Corrections with credit for time served, but that can only be done· on the consent of the State's Attorney in reducing the charge from residential to burglary."

The State's Attorney refused to lower the charges. Moore was sentenced to eight years and Jackson was sentenced to four years in the Illinois Department of Corrections.

I

Defendants' first contention on appeal is that the evidence was not sufficient to prove them guilty beyond a reasonable doubt. Defendants specifically argue that the house at 11014 S. Parnell was not a "dwelling place" as defined by the residential burglary statute.

That statute provides:

"A person commits residential burglary who knowingly and

without authority enters the dwelling place of another with the intent to commit therein a felony or theft." (Ill. Rev. Stat. 1987, ch. 38, par. 19—3.)

"Dwelling," for the purpose of the residential burglary statute, is defined as:

> "a house *** or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." Ill. Rev. Stat. 1987, ch. 38, par. 2—6(b).

Defendants contend that the house at 11014 S. Parnell was not inhabited at the time of the burglary and that none of the prior occupants had any intention of returning to it. They contend that the house was used only as a "storage space" and that the record does not indicate that Lowe intended to return to it. Their contentions, however, are not borne out by the record. During trial, Lowe clearly stated that while in Mississippi he intended to return to the house. Moreover, after one month's absence, Lowe did indeed move back into the house.

■ The residential burglary statute applies to burglaries of structures intended for use as residences, regardless of whether the structure was being actively used as a residence at the time of the burglary. (*People v. Benge* (1990), 196 Ill. App. 3d 56, 552 N.E.2d 1264; *People v. Sexton* (1983), 118 Ill. App. 3d 998, 1000, 455 N.E.2d 884.) Accordingly, the mere fact that Lowe travelled to Mississippi before the burglary took place does not mean that the house was not a "dwelling place." In fact, Lowe had returned to Chicago the evening before the burglary and had checked on the house both before and after the burglary.

Defendants' reliance upon *People v. Bales* (1985), 108 Ill. 2d 182, 483 N.E.2d 517, is misplaced. In that case, the supreme court stated:

> "The common sense construction of the phrase 'the dwelling place of another' as used in section 19—3 requires that the structure be one used by another as a residence or living quarters in which the owners or occupants actually reside or, if absent, intend within a reasonable period of time to reside." (*People v. Bales*, 108 Ill. 2d at 191.)

Defendants maintain that, because the occupant of the house was absent, the true focus should be on the occupant's intent to return. They further argue that the record does not indicate that the owners of the home had any intent to return. They assert that because one of Lowe's purposes in returning to Chicago was to sell the house, the house was not a dwelling. Thus, they argue, an element of residential burglary was not proved beyond a reasonable doubt.

■ The record, however, does not support defendants' arguments.

Lowe stated that before travelling to Mississippi he locked up his house securely and left all his furniture inside. He clearly stated that he intended to return to the house. In fact, soon after he returned to Chicago, the utilities were turned on and he lived in the house for one month before putting it up for sale. Although Lowe stated that one of his purposes in returning to Chicago was to sell the house, this did not mean that the house was no longer a "dwelling place." Lowe's intent was clear: while in Mississippi, he intended to return to his home in Chicago, which is precisely what he did. Putting the house up for sale one month after the burglary is irrelevant to the question of whether the house was a "dwelling place."

Based upon Lowe's testimony, the jury reasonably concluded that the house was a "dwelling place" and that Lowe, while in Mississippi, intended to return to it. Thus, defendants were properly convicted of residential burglary.

## II

Defendants next argue that the circuit court improperly refused to instruct the jury on the lesser included offenses of burglary and criminal trespass to a residence. In support of their contention, defendants rely upon *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413.

In *Bryant,* the court stated that an instruction on a lesser included offense is appropriate if the evidence would permit the trier of fact to rationally find the defendant guilty of the lesser offense and acquit him of the greater. (*People v. Bryant,* 113 Ill. 2d at 507.) Moreover, an included offense instruction is proper only where the charged offense requires the jury to find a disputed factual element which is not required in the lesser offense. *People v. Bryant,* 113 Ill. 2d at 507.

Although a defendant is entitled to instructions on lesser included offenses (*People v. Cramer* (1981), 85 Ill. 2d 92, 421 N.E.2d 189), those instructions will be permitted only if the trier of fact can rationally determine that the evidence is insufficient to support a finding of guilty of the greater offense, but sufficient for a finding of guilty of the lesser included offense. (*People v. Balls* (1981), 95 Ill. App. 3d 70, 419 N.E.2d 571.) It is equally true that where the evidence shows that defendants are either guilty of the higher offense or not guilty of any offense, an instruction on the lesser included offense is unnecessary and properly refused. *People v. Thompson* (1976), 35 Ill. App. 3d 773, 776, 342 N.E.2d 445.

In refusing to accept defendants' tendered instructions, the court stated that "the evidence in this case is uncontradicted, that the place was a residence, and it was used as a residence before the offense, and

after the offense." The prosecution presented overwhelming evidence that defendants committed the offense of residential burglary. Lowe lived at 11014 S. Parnell for eight years and then travelled to Mississippi for only one month. The utilities and gas were turned off for this period; however, they were turned on again after Lowe returned from Mississippi. Additionally, it is undisputed that defendants knowingly and without authority entered the house. Furthermore, defendants were seen carrying a refrigerator out of the house and several other items were missing from the house.

■ In the instant case, in regard to the residential burglary charge, an examination of all the testimony shows that the jury could have reached only one of two conclusions: defendants were guilty of residential burglary or they were not guilty. From the evidence contained in the record, defendants were unquestionably guilty of residential burglary. Therefore, defendants were not entitled to an instruction of the lesser included offenses, since the jury would have been justified in returning a verdict only on the greater offense. *People v. Sexton* (1983), 118 Ill. App. 3d 998, 455 N.E.2d 884.

### III

Finally, Jackson contends that the circuit court abused its discretion in sentencing him to prison rather than in ordering treatment under article III of the Alcohol and Substance Abuse Act (Ill. Rev. Stat. 1987, ch. 111½, pars. 6320 through 6325),[1] which provided that an addict charged with or convicted of a crime was eligible to elect rehabilitative treatment instead of traditional sentencing, within certain statutory limitations. Ill. Rev. Stat. 1987, ch. 111½, par. 6321.

When an addict elects to undergo treatment, the court must order an examination by a licensed program to determine whether he is likely to be rehabilitated through treatment. (Ill. Rev. Stat. 1987, ch. 111½, par. 6323.) In the instant case, Jackson moved for such an evaluation, which was granted. The result of the evaluation was that Jackson was an addict and that he demonstrated a likelihood of rehabilitation. However, the court denied Jackson's request for treatment.

■ A defendant does not have an absolute right to require the treatment alternative provided by the statute. (*People v. Hirschmann* (1988), 175 Ill. App. 3d 150, 529 N.E.2d 760.) Rather, the circuit court has broad discretion to deny or grant a defendant's request to partici-

---

[1]Sections 10—101 and 10—102 of the Illinois Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1989, ch. 111½, pars. 6360—1, 6360—2) have replaced these sections pursuant to Public Act 86—848, effective September 7, 1989.

pate in the treatment program. (*People v. Warren* (1977), 69 Ill. 2d 620, 373 N.E.2d 10.) Furthermore, the circuit court's determination of a defendant's eligibility for treatment and sentencing will not be reversed on review absent a showing that the court acted arbitrarily or abused its discretion. *People v. Hirschmann,* 175 Ill. App. 3d at 153.

Thus, we must determine whether the circuit court abused its discretion in sentencing Jackson. The court stated that it was "not opposed to giving [Jackson rehabilitative treatment] along with Probation and 6 months in the House of Corrections with credit for time served, but that can only be done on the consent of the State's Attorney in reducing that charge." The court further stated:

> "I have considered the [treatment alternative] report. However, the Court feels in view of the contents of the presentence investigation, in view of the fact that the legislature had seen fit to make this an offense that requires a mandatory sentence, the Court does not feel that it would be in the public interest to grant you [rehabilitative treatment]. However, the Court would encourage you to continue your narcotics treatment at the Department of Corrections, and the Court intends to impose the minimum sentence."

Defendant argues that the circuit court mistakenly believed that since Jackson was found guilty of residential burglary he was ineligible for treatment. However, it is evident from the language of the circuit court that it did not mistakenly believe that Jackson was ineligible. On the contrary, the record shows that the circuit court was aware of its discretion and that it weighed all the evidence in mitigation and aggravation and only then did it deny the treatment alternative to defendant.

■ The court's statement that it would sentence Jackson to six months' probation with treatment was merely a statement that it was willing to impose probation other than that provided by the Alcohol and Substance Abuse Act, if the State were to reduce the charge. Because the court considered the necessary factors in determining whether to sentence Jackson or place him in treatment, the court neither abused its discretion, nor arbitrarily denied treatment. *People v. Suane* (1987), 164 Ill. App. 3d 997, 518 N.E.2d 458.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.