[Nos. 30193-8-II; 31156-9-II. Division Two. August 24, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. JERRY RUSSELL MCDONALD, *Appellant*.

*Rebecca W. Bouchey*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *N. Antonio Hill, Deputy*, for respondent.

MORGAN, J. — Jerry Russell McDonald appeals a conviction for residential burglary. He claims that the trial court erred by not instructing on an inferior degree of the charged offense and that the evidence is insufficient to support his conviction. Accepting the first claim but rejecting the second, we reverse and remand for new trial.

On the morning of December 9, 2002, Kevin Hinton went to a house that he and his wife owned in Gig Harbor. He found the driveway gate open and a white van parked in front. A man was standing near the driver's side of the van, and the front door of the house was open. A woman came running out of the house, she and the man jumped in the van, and the man began driving slowly toward the gate. Hinton blocked the driveway and called 911. The van left the driveway, traveled along the fence line, then tried to traverse a short wall and some trees. It became stuck in a ditch, and its two occupants fled into the woods.

A short time later, a neighbor reported to 911 that two strangers were prowling around her driveway. A police dog tracked their scent to a horse trailer, in which deputies found a man and woman hiding. Hinton identified them as the two who had been at his house, and they were arrested. The man was McDonald.

Although Hinton and his wife had previously lived in the Gig Harbor house for about eight years, they had not been living there for the two or three months preceding the above incident. They had moved to Tacoma because Hinton was remodeling the Gig Harbor house in the evenings and on weekends. By December 9, 2002, he had torn out an exterior wall of the bathroom and covered the hole with plywood sheeting. He had removed the front steps, leaving a two-foot drop from the porch to the ground. He had dug a trench around the house's perimeter to facilitate work on the foundation. The house was essentially under construction and, according to a deputy who was in it on December 9, may not have had any beds.

The State charged McDonald with residential burglary, and the court convened a jury trial on March 19, 2003. Hinton had not yet finished remodeling, so he and his wife were still living in Tacoma. The evidence showed that the house had been locked prior to the burglary; that the intruders had probably entered through a window or by removing the plywood sheeting that covered the hole in the exterior bathroom wall; and that a number of items belong-

ing to the Hintons had been recovered from the abandoned white van.

At the end of the evidence, McDonald proposed an instruction that would have given the jury the option of convicting on second degree burglary rather than residential burglary. He reasoned that a person commits second degree burglary, not residential burglary, if he or she enters a building that is not a dwelling; that a jury could reasonably find that the Hintons' house was not a "dwelling" on December 9, 2002; and that the jury needed to consider this option. The State opposed the instruction, and the trial court sided with the State. Commenting that "[a] residence is a residence is a dwelling,"[1] the trial court reasoned in effect that the house was so clearly a dwelling that reasonable minds could not differ. The trial court refused to give the proposed instruction, and McDonald was convicted of residential burglary.

McDonald's first argument on appeal is that the trial court erred by not giving his proposed instruction on second degree burglary. RCW 10.61.003 provides that when a jury tries a defendant "for an offense consisting of different degrees," it "may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense."[2] RCW 10.61.006 provides that "[i]n all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he is charged . . . ."

■ To benefit from these statutes, the proponent of an instruction must satisfy both a legal requirement and a factual requirement.[3] To satisfy the legal requirement, the

---

[1] 2 Report of Proceedings (RP) at 120.

[2] *See also* RCW 10.61.010 ("Upon the trial of an indictment or information, the defendant may be convicted of the crime charged therein, or of a lesser degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a lesser degree of the same crime."); *State v. Tamalini*, 134 Wn.2d 725, 731, 953 P.2d 450 (1998), *aff'd*, 249 F.3d 895 (9th Cir. 2001).

[3] *Tamalini*, 134 Wn.2d at 728, 732.

proponent must show that the proposed instruction describes an offense that is an inferior degree of the charged offense,[4] or, alternatively, that the proposed instruction describes an offense each element of which is included within the charged offense.[5] To satisfy the factual requirement, the proponent must show that when the evidence is viewed in the light most favorable to him,[6] the jury could find that even though the defendant is not guilty of the charged offense, he is guilty of the inferior or lesser offense embodied in the proposed instruction.[7]

▇ The parties agree that McDonald satisfied the legal requirement in this case.[8] The legislature has divided a single offense, burglary, into three degrees: first,[9] residential,[10] and second.[11] Two of those degrees are pertinent here: residential[12] and second.[13] A person is guilty of residential burglary if, with intent to commit a crime therein, he enters or remains unlawfully in a "dwelling"

---

[4] *Tamalini*, 134 Wn.2d at 732; *State v. Foster*, 91 Wn.2d 466, 472, 589 P.2d 789 (1979).

[5] *Tamalini*, 134 Wn.2d at 728-29; *State v. Berlin*, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997); *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

[6] *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000) ("When determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court is to view the supporting evidence in the light most favorable to the party that requested the instruction.").

[7] *Tamalini*, 134 Wn.2d at 729, 732; *State v. Ieremia*, 78 Wn. App. 746, 755, 899 P.2d 16 (1995) (evidence must support inference that defendant committed the lesser offense "instead of" the charged offense) (citing *State v. Bergeson*, 64 Wn. App. 366, 369, 824 P.2d 515 (1992)), *review denied*, 128 Wn.2d 1009 (1996).

[8] Br. of Resp't at 5 ("The State agrees that the proposed charge of burglary in the second degree is an inferior degree of the crime of residential burglary, thus the legal prong of the test has been satisfied."); Br. of Appellant at 3 ("The legal prong of the test is met in this case—second-degree burglary is an inferior degree of residential burglary.").

[9] RCW 9A.52.020.

[10] RCW 9A.52.025.

[11] RCW 9A.52.030.

[12] RCW 9A.52.025.

[13] RCW 9A.52.030.

other than a vehicle.[14] A person is guilty of second degree burglary if, with intent to commit a crime therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling.[15] Although residential burglary and second degree burglary are both Class B felonies, the legislature has mandated that the sentencing guidelines commission "consider residential burglary as a more serious offense than second degree burglary."[16] Necessarily then, second degree burglary is an inferior degree of residential burglary.

■ The parties dispute whether McDonald satisfied the factual requirement. McDonald reasons that the jury could have convicted on second degree burglary instead of residential burglary because, when the evidence is viewed in the light most favorable to him, the jury could have found that on December 9, 2002, the Hintons' house was not a "dwelling" within the meaning of RCW 9A.04.110(7). The State reasons that the jury could not have convicted on second degree burglary instead of residential burglary because, even when the evidence is taken in the light most favorable to McDonald, the jury could have found *only* that the Hintons' house was a "dwelling" within the meaning of RCW 9A.04.110(7).

RCW 9A.04.110(7) defines a "dwelling" as "any building or structure . . . which is used or ordinarily used by a person for lodging." Taking the evidence in the light most favorable to McDonald, a jury could have found that no one was living in the Hintons' house from about October 2002, to at least March 2003, and thus that the house was not being "used or ordinarily used by a person for lodging" on December 9, 2002. McDonald satisfied the factual requirement as well the legal one, and the trial court erred by refusing his proposed instruction.

■ In addition to arguing that the trial court erred by not giving his proposed instruction, McDonald argues that

---

[14] RCW 9A.52.025.

[15] RCW 9A.52.030.

[16] RCW 9A.52.025(2).

the evidence is insufficient to support a finding that the Hintons' house was a "dwelling" within the meaning of RCW 9A.04.110(7). According to most other jurisdictions,[17] however, the question whether a building is a residence turns on all relevant factors[18] and is generally a matter for the jury to decide.[19] Agreeing, we hold that the evidence in this case presents a jury question on whether the Hintons' house was a "dwelling."

Reversed and remanded for new trial.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.

---

[17] *But see Watson v. State*, 254 Miss. 82, 179 So. 2d 826, 827 (1965) (where house is constructed but no one has ever lived in it, house is not a dwelling); *Woods v. State*, 186 Miss. 463, 191 So. 283, 284 (1939) (same).

[18] *State v. Black*, 627 So. 2d 741, 745 (La. Ct. App. 1993) ("To determine whether the house was 'lived in' . . . it is proper to consider whether the occupant deemed the house to be her place of abode and whether she treated it as such."); *Hargett v. State*, 534 S.W.2d 909, 911 (Tex. Crim. App. 1976) (where building was furnished and rented out periodically, it was inhabited); *Rash v. Commonwealth*, 9 Va. App. 22, 383 S.E.2d 749, 751-52 (1989) (occupant's intent to return is a factor in determining if building is a dwelling); *see also Occupant's Absence From Residential Structure as Affecting Nature of Offense as Burglary or Breaking and Entering*, 20 A.L.R.4th § 11, at 349 (1983); 13 AM. JUR. 2D *Burglary* § 6, at 185 ("In determining whether a structure is a dwelling, the courts consider numerous factors such as . . . whether the structure is 'usually occupied' by a person lodging there at night . . . whether it is 'maintained' as a dwelling . . . [and] how long it was vacant.") (citations omitted).

[19] *See, e.g., State v. Engram*, 831 P.2d 362, 366 (Ariz. Ct. App. 1991) (whether apartments were suitable for residential use "was a question for the jury"); *People v. Willard*, 303 Ill. App. 3d 231, 707 N.E.2d 1249, 1251, 236 Ill. Dec. 679 (1999) (a "rational jury could find defendant guilty of [non-residential] burglary beyond a reasonable doubt. The evidence at trial clearly showed that the building defendant entered was not a dwelling."); *People v. Moore*, 206 Ill. App. 3d 769, 565 N.E.2d 154, 157, 151 Ill. Dec. 883 (1990) (evidence supported jury's finding that house was a "dwelling place"); *Black*, 627 So. 2d at 746 (sufficient evidence to support jury's finding that the house was inhabited); *People v. Sheirod*, 124 A.D.2d 14, 510 N.Y.S.2d 945, 948 (1987) (jury could properly find that a year's absence from a dwelling is "temporary"); *State v. Green*, 18 Ohio App. 3d 69, 480 N.E.2d 1128, 1132 (1984) (sufficient evidence to support jury's finding that the house was "occupied").