# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Respondent,<br><br>  v.<br><br>JOSEPH ALLEN KELLY,<br><br>    Appellant. | No. 69369-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: April 28, 2014 |

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2014 APR 28 AM 11: 39
FILED

LEACH, J. — Joseph Kelly appeals his conviction for residential burglary. He claims that insufficient evidence supports his conviction because the State failed to prove the house Kelly entered was a dwelling. In a statement of additional grounds, Kelly also contends the court erred by excluding "motive testimony for why [Errol Hanson] would lie." Because the record includes evidence sufficient to support the jury's finding that Kelly entered a dwelling and the exclusion of "motive testimony" was harmless error, we affirm.

## Background

In October 2010, Errol and Laura Hanson[1] acquired a property in Conway, Washington, that included "an old house," a barn, and "some outbuildings." In

---

[1] For clarity, we refer to Errol, Laura, and their son Troy Hanson by their first names.

July 2011, Errol hired Kelly to work on the property and allowed him to stay in a room in the barn. Kelly does not dispute that Errol and his family were remodeling the house with the intention of living there. However, while Kelly worked for them, neither Errol nor Laura ever lived or slept in the house. They stored antiques inside the house and kept it locked. Errol visited the house and the large barn almost every day.

On October 18, 2011, Laura reported a theft of certain items from their barn. The Hansons found a slip in the barn showing Kelly had pawned their battery charger. Also, the Hansons reported 300 feet of "very old wood molding" missing from inside the house.

On September 10, 2012, the State charged Kelly with theft in the first degree, residential burglary, and four counts of trafficking in stolen property in the first degree.

At trial, Deputy Morgan testified about his investigation and determination that Kelly pawned a battery charger and a grease gun. Also, Deputy Morgan testified Kelly admitted to taking a flagpole and "several other items of metal from the Hanson property." Errol told Deputy Morgan approximately 300 feet of molding was stolen from the house. Deputy Morgan further testified Kelly denied "ever removing any of the molding off of the property itself, just from the residence into the barn." Deputy Morgan testified that there was "some discrepancy over the title [of a car], and a dispute between the parties" about a loan.

Also at trial, Errol testified that he hired Kelly to "work off the loan" Kelly owed him. He further testified that Kelly previously signed over the title of a car and annuity proceeds in a checking account to him as collateral for the loan. Errol testified that he learned Kelly closed the checking account, and Kelly put the car title in his daughter's name.

Errol, Laura, and their son Troy each testified that Kelly did not have a key to the house, and they "made it clear to [Kelly]" that they did not want him in the house. Troy and Deputy Morgan testified that Kelly admitted to entering the house and to taking "some of the molding from inside the house out to the barn."

Kelly maintained that Errol hired Kelly to do maintenance around the farm and that he had permission from Errol to clean up inside the house and dispose of the scrap metal in the barn. Kelly testified that Errol never told him he "could not go into the house." Kelly further testified that Errol instructed him to open and shut the windows each day and fix the plumbing leaks in the house.

Kelly testified he worked in order to earn money and not to pay off the loan. Defense counsel attempted to ask Kelly about his daughter's car that was collateral for the loan he owed Errol. The following exchange occurred at trial:

[Defense]: Okay. Could you tell us about the car that Errol took from you that you signed over to him?

[State]: Objection. Relevance.

The Court: Sustained.

[Defense]: Okay. Is the Court going to make the same ruling if I ask about the annuities?

[State]: I would make the same objection.

The Court: Same ruling.

[Defense]: Okay. Okay.

Defense counsel did not pursue this issue further.

The jury convicted Kelly of residential burglary and other counts. Kelly appeals.

## Analysis

### Sufficiency of the Evidence

Kelly first contends that insufficient evidence supports his residential burglary conviction because the State did not prove he entered a "dwelling." When reviewing a sufficiency challenge, we view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] We draw all reasonable inferences from the evidence in favor of the State.[3] Circumstantial evidence is as reliable as direct evidence.[4] A defendant challenging the sufficiency of the evidence "admits the truth of the State's evidence."[5] We do not review credibility determinations, which are for the trier of fact.[6] Thus, we defer to the jury on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.[7]

---

[2] State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).
[3] Hosier, 157 Wn.2d at 8.
[4] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).
[5] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[6] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).
[7] State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

To convict Kelly of residential burglary, the State had to prove Kelly "enter[ed] or remain[ed] unlawfully in a dwelling other than a vehicle," as defined in RCW 9A.52.025(1). RCW 9A.04.110(7) defines a "dwelling" as "any building or structure . . . which is used or ordinarily used by a person for lodging." Kelly argues that the evidence at trial showed the Hansons kept the house as "a place for storage" and "never lived nor slept there," and thus the house was not a "dwelling."

The State presented evidence that the Hansons were remodeling the house in order to live there. They stored antiques inside, kept the house locked, did not allow Kelly inside the house, did not provide Kelly with a key to the house, and visited the house and the large barn almost every day.

The question whether a house is a dwelling "turns on all relevant factors and is generally a matter for the jury to decide."[8] The jury here could have found that the Hansons' house was not being "used or ordinarily used by a person for lodging" at the time of the burglary.[9] But the fact that the house was currently unoccupied did not preclude it from being considered a "dwelling" under RCW 9A.04.110(7).[10] Viewed in the light most favorable to the State, the evidence was sufficient to support the jury's finding that Kelly entered a dwelling when he entered the Hansons' house.

---

[8] State v. McDonald, 123 Wn. App. 85, 91, 96 P.3d 468 (2004).
[9] See McDonald, 123 Wn. App. at 90.
[10] McDonald, 123 Wn. App. at 91.

Statement of Additional Grounds

Kelly was the only defense witness. During direct examination, defense counsel attempted to ask questions about "the car that Errol took from [Kelly]" and "the annuities." The trial court sustained the State's relevance objections to them. In a statement of additional grounds, Kelly contends that the court erred by denying him the "opportunity to present motive testimony for why Mr. Hanson would lie" about "improperly seizing [Kelly's] daughter's car in retaliation for an unpaid loan."

We need not decide whether the court abused its discretion by excluding this "motive testimony" because any alleged error was harmless. An evidentiary error is harmless if, within reasonable probabilities, it did not materially affect the outcome of the trial.[11] The jury received similar evidence through testimony from Errol Hanson and Deputy Morgan; therefore, the "motive testimony" offered by Kelly is "cumulative at best and, as such, any error in its exclusion may be deemed harmless."[12] Thus, there is no reasonable probability that the exclusion of this cumulative testimony affected the outcome of the trial.

---

[11] State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986); see also State v. Wanrow, 88 Wn.2d 221, 237, 559 P.2d 548 (1977).

[12] Latham v. Hennessey, 13 Wn. App. 518, 526, 535 P.2d 838 (1975); see also ER 403; Havens v. C&D Plastics, Inc., 124 Wn.2d 158, 169-70, 876 P.2d 435 (1994) (the erroneous exclusion of cumulative evidence is harmless error).

Conclusion

Because the State presented sufficient evidence to support a jury finding that the Hansons' house was a dwelling and the exclusion of the "motive testimony of why Mr. Hanson would lie" was harmless error, we affirm.

_Leach, J._

WE CONCUR:

_Cox, J._                    _Appelwick, J._