IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46382-2-II |
| Respondent, | |
| v. | |
| KRISTEN A. MARIA HIGHSMITH, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — A jury found Kristen Highsmith guilty of residential burglary after she took items from a home that was unoccupied at the time of the burglary. Highsmith appeals her conviction and sentence. We hold that (1) the evidence was sufficient to support Highsmith's conviction because a rational fact finder could conclude, based on the evidence, that the house was ordinarily used for lodging, (2) Highsmith did not receive ineffective assistance of counsel because counsel's chosen defense was a legitimate trial tactic, and (3) Highsmith has waived any challenge to the trial court's imposition of legal financial obligations (LFOs). Accordingly, we affirm Highsmith's conviction and sentence.

FACTS

In December 2012, Natalie and Landon Foss purchased a home in Port Orchard. The following year, the Fosses decided to move back to Spokane. They listed the Port Orchard house for sale in July 2013. The Fosses kept some of their furniture and personal effects—including one

of their vehicles—at the Port Orchard house while it was listed for sale. After the move to Spokane, the Fosses regularly returned to the Port Orchard house once or twice a month to continue work on various home improvement projects.

On December 16, 2013, the Fosses' real estate broker, Sandra Nelson, visited the property, which had previously been locked with a realtor's lockbox. When she arrived, Nelson observed a vehicle in the driveway that she did not recognize. Concerned, Nelson called 911. Port Orchard Police Sergeant Donna Main and Officer Nathan Lynch responded to the scene. As Officer Lynch drove toward the home, the suspicious vehicle approached from the opposite direction. Officer Lynch stopped the car, which was driven by Highsmith. Officer Lynch saw clothes and boxes in Highsmith's vehicle.

Meanwhile, Nelson accompanied another responding deputy to the Fosses' house. When she passed Highsmith's car, Nelson saw bedding that she recognized as belonging to the Fosses. Once there, it was clear to Nelson that furniture, as well as a number of the Fosses' personal effects, were missing from the home. Based on Nelson's description of the home, Officer Lynch arrested Highsmith.

Officer Lynch took photographs of the items contained in the car. He e-mailed those pictures to the Fosses who confirmed that some of those items were their belongings. Natalie[1] explained that "[a]lmost everything" was gone, they were missing couches, lamps, rugs, tables, pictures, personal items from their bathrooms, and their children's toys that had been left because they were "still going back and forth." 1 Report of Proceedings (RP) at 163.

---

[1] We refer to the Fosses individually by their first names for clarity, intending no disrespect.

The State charged Highsmith with residential burglary under RCW 9A.52.025(1). At trial, defense counsel argued that Highsmith lacked the intent to commit a crime when she entered the Foss home. A jury found Highsmith guilty as charged. At the sentencing hearing, the trial court found that, but for Highsmith's incarceration, she was capable of working and, therefore, had the ability to pay the LFOs. Highsmith appeals.

## ANALYSIS

### I. INSUFFICIENT EVIDENCE

Highsmith argues that the evidence was insufficient to support her conviction because under the "relevant factors" test, the State failed to prove that the building was a "dwelling" for purposes of the residential burglary charge. We disagree because sufficient evidence established that the burglarized building was ordinarily used for lodging.

To determine whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003). The relevant question is "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *Wentz*, 149 Wn.2d at 347). In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Drum*, 168 Wn.2d at 35 (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We interpret the evidence "'most strongly against the defendant.'" *State v. Hernandez*, 172 Wn. App. 537, 543, 290 P.3d 1052 (2012) (internal quotation marks omitted) (quoting *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993)). We consider both circumstantial and direct evidence as equally reliable and defer to the trier of fact on issues of conflicting testimony, witness

credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Under RCW 9A.52.025(1), "[a] person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." "'Dwelling' means any building or structure . . ., or a portion thereof, which is used or *ordinarily used* by a person for lodging." RCW 9A.04.110(7) (emphasis added). Whether a particular building is a dwelling turns on all relevant factors and is generally decided by the jury. *State v. McDonald*, 123 Wn. App. 85, 91, 96 P.3d 468 (2004).

In support of her contention that the unoccupied home here did not constitute a dwelling on the date of the alleged crime, Highsmith relies primarily on this court's decision in *McDonald*. There, a husband and wife owned a home in Gig Harbor in which they had lived for several years. *McDonald*, 123 Wn. App. at 87. The couple sought to remodel the home, so they moved to Tacoma, spending evenings and weekends performing the improvements. *McDonald*, 123 Wn. App. at 87. While the home was "essentially under construction," it was burglarized. *McDonald*, 123 Wn. App. at 87.

In *McDonald*, we held that the question of whether a building is a residence turns on all relevant factors and there it presented a jury question as to whether the house was a dwelling. 123 Wn. App. at 91. The *McDonald* court cited several cases from other jurisdictions to identify a number of factors to consider in deciding if a house is a dwelling, including whether "'the occupant deemed the house to be her place of abode and whether she treated it as such,'" whether it is furnished and rented out periodically, if it was inhabited, whether it was maintained as a dwelling,

and how long it was vacant.  123 Wn. App. at 91 n.18 (quoting *State v. Black*, 627 So. 2d 741, 745 (La. App. 1993)).

Here, Highsmith asserts that, unlike *McDonald*, the State's evidence was insufficient to prove that the Fosses' home was a dwelling because the home was unoccupied for longer than the two-to-three-month period in *McDonald*, the Fosses returned only once or twice a month, and there was no testimony that the Fosses slept at the home when they did return.  Therefore, in Highsmith's view, the jury could not have found that the house was a dwelling considering the relevant factors.

Notwithstanding these contentions, there was sufficient evidence that the Fosses' house was used or ordinarily used for lodging such that the jury could have rationally found that the home was a dwelling for purposes of Highsmith's residential burglary conviction.  The Fosses lived in the Port Orchard home for several months after purchasing it.  Natalie testified that several pieces of their furniture and home fixtures had been taken.

The burglars had also taken sheets off of the Fosses' bed, their shower curtains, shampoo, Natalie's curling iron, Landon's shaving kit, and toilet paper from the bathroom.  Likewise missing were articles of the Fosses' clothing, photographs, and children's toys.  Natalie explained that they purposely declined to pack some of their children's favorite things and clothing at the Port Orchard house because "[they] went back and forth."  1 RP at 167.

There was sufficient evidence from which a rational fact finder could have concluded that the home was ordinarily used for lodging and therefore qualified under the statute as a dwelling. Accordingly, we hold that Highsmith's conviction was supported by sufficient evidence.[2]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Highsmith next argues that she received ineffective assistance of counsel because her trial attorney did not raise the "strong defense" that the Fosses' home was not a dwelling. In Highsmith's view, the jury "likely did not even think there was an issue as to whether the building was a 'dwelling'" because it was not raised. Br. of Appellant at 16. We disagree that Highsmith's trial counsel rendered ineffective assistance.

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). An appellate court reviews an ineffective assistance claim de novo, beginning with a strong presumption that trial counsel's performance was adequate and reasonable and giving exceptional deference when evaluating counsel's strategic decisions. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *McNeal*, 145 Wn.2d at 362. We need not address both

---

[2] In the alternative, Highsmith asks us to adopt a new test as to what constitutes a dwelling premised on the statutory meaning of dwelling. Highsmith asserts that the evidence also would be insufficient to establish that the Fosses' home was a dwelling under this proposed test. To the extent Highsmith argues that the Fosses' home is not a dwelling because it was unoccupied at the time of the burglary, we reject it. Highsmith ignores the statutory language "used or ordinarily used" for lodging. Here, the evidence shows the Fosses' home was ordinarily used for lodging.

prongs of the test if the defendant makes an insufficient showing on either prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Given the deference we afford defense counsel's decisions in representation, the threshold for deficient performance is high. *Grier*, 171 Wn.2d at 33. Thus, "[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. Conversely, a criminal defendant can rebut the presumption of reasonable performance by demonstrating that "there is no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

Here, Highsmith's trial counsel challenged whether the State's evidence established that Highsmith entered the home with the intent to commit a crime. His defense theory was that Highsmith, a former real estate agent herself, simply intended to show a friend a listed home that was similar to one owned by that friend's mother. This theory was as viable a challenge as the argument Highsmith now asserts that counsel should have made and we give exceptional deference when evaluating counsel's strategic decisions. *Strickland*, 466 U.S. at 689.

Defense counsel opted to premise Highsmith's defense on one arguably reasonable theory in lieu of another. Accordingly, we hold that counsel employed a legitimate trial tactic and therefore counsel's performance was not deficient. *Kyllo*, 166 Wn.2d at 863. We hold that Highsmith's argument fails.

### III. LEGAL FINANCIAL OBLIGATIONS

Highsmith argues that the trial court erred during her sentencing hearing by failing to conduct an inquiry into her present and future ability to pay before imposing LFOs. We decline to reach the merits of Highsmith's argument.

Under RCW 10.01.160(3), "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

But Highsmith did not challenge the trial court's imposition of LFOs at her sentencing. Our decision in *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), *remanded*, 182 Wn.2d 827, 344 P.3d 680 (2015), issued before Highsmith's May 23, 2014 sentencing, provided notice that the failure to object to LFOs during sentencing may waive a related claim of error on appeal. Our Supreme Court noted that an appellate court may use its discretion whether to reach unpreserved claims of error. *Blazina*, 182 Wn.2d at 830. We decline to exercise such discretionary review here. *See State v. Lyle*, 188 Wn. App. 848, 851-52, 355 P.3d 327 (2015). Accordingly, we hold that Highsmith has waived any challenge to the trial court's imposition of LFOs.

No. 46382-2-II

We affirm Highsmith's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MAXA, J.