# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50543-6-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| NATHANIEL JOHN HALL, | |
| Appellant. | |

MAXA, C.J. – Nathaniel Hall appeals his residential burglary conviction. He argues that the evidence was insufficient to prove that the unoccupied house that he burglarized was a "dwelling," as required to convict for residential burglary.

We hold that the State presented sufficient evidence to establish that the house was a dwelling even though its elderly owner did not live there. Accordingly, we affirm Hall's conviction.[1]

## FACTS

In October 2014, Lloyd Fredson moved his elderly mother Myrtle Fredson from her home in Puyallup to Port Orchard to live near him because she had been having health problems. Myrtle[2] had lived in the house since 1986, but by 2014 had difficulty managing her affairs.

---

[1] The jury also convicted Hall of third degree theft and making or having burglary tools. He does not challenge these convictions in this appeal.

[2] We use the Fredsons' first names to avoid confusion and intend no disrespect.

When Myrtle went to live in Port Orchard, she left furniture throughout the house, beds in each bedroom, appliances, clothes, and personal belongings in the Puyallup home. However, nobody lived in the house. After Myrtle went to live in Port Orchard, Lloyd and Myrtle tried to visit the Puyallup house once or twice a week.

Over time, unknown people broke windows and broke down doors in order to get inside the house. Lloyd eventually boarded up the windows and secured the broken front door to keep people out. He also posted no trespassing and warning signs throughout the property.

On February 2, 2016, Lloyd and Myrtle went to her home to check on it. Lloyd suspected that someone was inside the house and called the sheriff. Officers responded and arrested Hall as he came out of the house. Hall was carrying a backpack that contained items that Lloyd and Myrtle identified as possessions that she had left in the house.

The State charged Hall with residential burglary, third degree theft, and making or having burglary tools. A jury found him guilty of all three counts. Hall appeals his residential burglary conviction.

ANALYSIS

A.    STANDARD OF REVIEW

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

B.      SUFFICIENCY OF EVIDENCE – "DWELLING"

Hall argues that the evidence was insufficient for a jury to find that Myrtle's house was a "dwelling" at the time of his burglary.  We disagree.

1.    Legal Principles

Under RCW 9A.52.025, a person commits residential burglary "if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling."  RCW 9A.04.110(7) defines "dwelling" as "any building or structure . . .  which is used or ordinarily used by a person for lodging."

Whether a building is a dwelling "turns on all relevant factors and is generally a matter for the jury to decide." *State v. McDonald*, 123 Wn. App. 85, 91, 96 P.3d 468 (2004).  As a result, whether a building is a dwelling cannot always be decided as a matter of law. *State v. McPherson*, 186 Wn. App. 114, 118, 344 P.3d 1283 (2015).

No published Washington case has discussed in detail the factors relevant to determining whether an unoccupied house constitutes a dwelling.  In *McDonald*, a house's owners had not lived there for two or three months while they were remodeling it.  123 Wn. App. at 87.  This court in a footnote identified several relevant factors stated in cases from other jurisdictions and a secondary source.  These factors were (1) whether the occupant deemed the house his or her abode and treated it as such, (2) whether the house was furnished and rented out periodically, (3) whether the occupant intended to return, (4) whether the house usually was occupied by someone lodging there at night, (5) whether the house was maintained as a dwelling, and (6) how long the house had been vacant. *Id*. at 91 n.18.  But the court did not expressly adopt these factors nor apply them in summarily holding that the evidence in that case presented a jury question. *Id.* at 91.

2.    Analysis

Here, Hall points to several factors suggesting that Myrtle's house did not constitute a dwelling at the time of the burglary. Nobody had lived in the house for over 15 months. All the windows had been boarded up and the broken front door had been secured. And there was no evidence that Lloyd or Myrtle planned for Myrtle to resume living in the house or for anyone else to live in the house.[3]

However, other factors support a finding that the house constituted a dwelling even through it had been unoccupied for some time. First, Myrtle had used the house for lodging for almost 30 years. There is no indication that the house had been used for anything other than lodging during that time. As a result, at least before Myrtle ceased living there, the house ordinarily had been used for lodging. And the nature and character of the house and its contents had not changed even though it was unoccupied.

Second, the house remained fully furnished. There was furniture in every room, including beds in all the bedrooms. Appliances were present. With regard to furnishings, the house was immediately available to be used for lodging.

Third, Myrtle left clothing and personal belongings in the house. In fact, Lloyd admitted that his mother was somewhat of a hoarder and that a large number of her possessions remained in the house. Myrtle may not have been living in the house, but she had not formally moved out.

Fourth, although Myrtle did not testify, a reasonable inference from the evidence is that she continued to regard the house as her abode. She had not abandoned her house. Myrtle,

---

[3] The State claims that the Fredsons' plan was to return Myrtle to the Puyallup house. However, the evidence does not support this claim even viewed in the light most favorable to the State. Although the initial hope may have been to return Myrtle to the house, nothing in the record shows that she had an intention to return in 2016 when Hall committed the burglary.

along with Lloyd, visited the house once or twice a week.  They took steps to prevent people from damaging or entering the house so that the house would remain habitable.

Finally, Myrtle did not "voluntarily" cease to occupy her house.  She essentially was forced to leave because of her age-related health problems.  Although there is no evidence that there was a plan for Myrtle to return, a reasonable inference from the evidence is that she would return if she was able to take care of herself.

Because there are competing factors, we hold that there was sufficient evidence for a rational jury to determine that the house Hall burglarized was a dwelling.  The jury properly was allowed to consider all the relevant factors in making this determination.

CONCLUSION

We affirm Hall's residential burglary conviction.

MAXA, C.J.

We concur:

LEE, J.

MELNICK, J.