IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78567-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSEPH V. ZIRANSKI, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 12, 2019 |

SCHINDLER, J. — Joseph V. Ziranski seeks reversal of the jury conviction for residential burglary. Ziranski claims insufficient evidence supports the jury finding that he entered or remained unlawfully in a "dwelling" in violation of RCW 9A.52.025(1). Viewing the evidence in the light most favorable to the State, sufficient evidence supports the conviction, and we affirm.

FACTS

Paul Sanchez owned a five-acre parcel of property off Kendall Road in the Maple Falls area of Whatcom County. A mobile home and a large two-story building are located on the property at the end of a long gravel driveway surrounded by thick foliage. The ground floor of the two-story building contains a three-car garage and a shop. An interior staircase leads to a second-floor apartment.

Paul[1] and his family lived in the mobile home and his father-in-law lived in the apartment. In approximately 2009, Paul and his family moved out of the mobile home. Paul's father-in-law continued to live in the apartment of the two-story building on the property. No one lived in the mobile home after Paul and his family moved.

In 2015, Paul decided to repair the mobile home and sell the property. At the beginning of January 2016, Paul's father-in-law moved out of the apartment and Paul began working on repairing the mobile home. Paul stored and locked several "bundles of flooring" and the tools he was using to repair the mobile home in the shop in the two-story building. Because of snow, Paul did not go to the property on January 5 or 6.

On January 7, Paul and his son Dominic returned to the property to install the new flooring in the mobile home. When they went to get the tools and flooring out of the shop, they saw footprints and fresh tire tracks leading up to the building in the snow. The shop door was ajar and damaged. Full toolboxes and several large tools, including drills, a table saw, and a compressor, as well as most of the flooring materials were missing from the shop. Paul went to the mobile home to get his cell phone to call the police.

While Dominic was waiting outside, a 1990 white Ford pickup truck with a canopy drove down the gravel driveway toward him. Paul ran outside. The truck started "revving" its engine and "reversing back really fast." The driver backed the truck into a tree, damaging the tree and the rear bumper of the truck before driving away.

While waiting for the police to arrive, Dominic found a set of keys on the ground outside the shop door. One of the keys had a Ford emblem.

---

[1] We refer to the victims by their first names for purposes of clarity and mean no disrespect by doing so.

2

Whatcom County Sheriff's Deputy Todd Walcker responded to the 911 call. Deputy Walcker took photographs of the damaged shop door, the footprints around the building, and the tire tracks in the snow. The tire tracks leading up to the two-story building matched the tire tracks at the damaged tree. White paint chips were lodged in the tree. Deputy Walcker photographed the keys Dominic found outside the shop door.

Using social media, Dominic obtained information about the location of the white Ford pickup truck. Dominic drove to a residence in Maple Falls. The Ford pickup truck with damage to the rear bumper was parked on the street near the driveway of the residence. Dominic contacted Deputy Walcker to report the license plate information. Joann Thoresen was listed as the registered owner of the truck.

The next day on January 8, Deputy Walcker went to Maple Falls. The 1990 white Ford pickup truck was still parked on the street near the driveway of the residence. Deputy Walcker saw fresh tree bark on the bumper of the truck. The tire tracks in the snow at the residence matched the tire tracks at Paul's property. Deputy Walcker contacted Paul and Dominic and asked them to meet him at the residence where the truck was parked in Maple Falls. While Deputy Walcker waited, Thoresen and Joseph V. Ziranski arrived. Ziranski talked to Deputy Walcker. Ziranski initially "denied ever being at the property, and then he changed his story and indicated that he had been there when he was out for a drive the day before." Ziranski "admitted that he had been the driver that struck the tree." Deputy Walcker asked Ziranski if he lost any keys. Ziranski said he did not. However, Ziranski later told Deputy Walcker that he had lost his keys. Ziranski denied burglarizing the shop but said he could help obtain the

stolen tools and would meet Deputy Walcker and Dominic at the property in approximately an hour.

Forty-five minutes later, Ziranski met Deputy Walcker and Dominic at the property with some of the stolen tools. The tools had been painted with "fresh . . . purple stripes." Paul and Dominic identified the tools with yellow handles and black tips as belonging to them.

The State charged Ziranski with committing the crime of residential burglary on January 5, 2016 in violation of RCW 9A.52.025(1). Ziranski pleaded not guilty.

The State called several witnesses to testify at trial, including Paul, Dominic, and Deputy Walcker. The court admitted into evidence a number of photographs of the two-story building, damaged shop door, tire tracks, damaged tree, and keys Dominic found near the shop.

Paul testified the snow prevented him from working on the mobile home from January 3 until January 7, 2016. Paul testified that when he went to the property on January 7, there was still fresh snow on the ground and he saw footprints in the snow around the two-story building. Paul testified the shop door was damaged and looked like it had been pried open. Paul said the doorknob "had been pried open," the door "was open maybe three inches," and the "actual frame . . . was broken, so it was jimmied with something." Paul testified, "I noticed that all my tools were gone."

Dominic testified that it looked like someone had "kicked in" the shop door. Dominic said he found the set of keys with the Ford emblem "right at the entrance of the doorway . . . to the shop." Dominic heard Ziranski tell Deputy Walcker that he "was part of the crime" and "he'll get our tools back." Dominic testified that when Ziranski returned

with the tools, Ziranski "looked toward the ground and said he was sorry for stealing items."

Deputy Walcker testified that it looked like someone forcibly pried open the shop door. Deputy Walcker saw footprints and large unique tire tracks in the snow near the shop. The tire tracks by the shop door matched the tracks leading from the driveway to the damaged tree. Deputy Walcker said the damaged tree contained white paint chips that matched the white Ford pickup truck, and the set of keys Dominic found included a key with the Ford emblem. Deputy Walcker said Thoresen identified Ziranski as the sole driver of the 1990 white Ford pickup truck registered to her.

Deputy Walcker testified that Ziranski initially told him he "was out for a drive the day before, and again, the victim's property is well off of the roadway. You cannot see it from Kendall Highway, and he indicated that he did remember possibly driving down their driveway." Ziranski later told Deputy Walcker that he "went to the property, I believe the first time was on the 5th; the second time was on the 6th, and then the third time was on the 7th." Deputy Walcker testified that Ziranski admitted he "had broken into the victim's shop." When Deputy Walcker asked if Ziranski could get Paul's tools back, he nodded his head "yes." Deputy Walcker testified that he permitted Ziranski to leave for one hour to get the stolen tools and agreed to meet at the Sanchez property. Deputy Walcker testified that "without prompting," Ziranski also told him that the keys Dominic found were in fact his keys. Deputy Walcker testified, "I do remember [Ziranski] apologized and said that he was sorry for taking their items. He indicated that what he returned was all of the items that he took."

Ziranski testified that he went to the property on January 7 because "it was for sale, and you know, I was looking for property for a, for, to build a good garage." Ziranski said on January 7, he was driving his "F-250 '90 pick-up truck, a white truck with big tires, and I do logging with it, and I tried to turn around in that narrow road, and I backed into the tree." Ziranski denied telling Deputy Walcker that he forcibly entered the shop door. Ziranski said, "I never even seen that door that he's talking about. He asked me several times how did I get in, how did I get in? I said get into what? He says to the residence. I says I didn't, I didn't get, I never was back here." Ziranski testified the keys Dominic found did not belong to him—" 'They're not my keys.' "

Ziranski testified he told Deputy Walcker that he did not burglarize Paul's property but knew where people often "stash" stolen goods. Ziranski testified he told Deputy Walcker, " 'I think I may be able to locate some of the stuff' " but would have to do so alone. Ziranski said that after he brought some of the tools to the property, he told Dominic, " 'I'm sorry for what happened to you.' "

In rebuttal, Deputy Walcker testified that when Ziranski brought the tools back, "some of the tools had been spray painted with some purple spray paint." Deputy Walcker testified he searched the Thoresen property on January 15 and found "a purple can of spray paint, and some of the tools inside of that trailer had been also spray painted purple."

The jury found Ziranski guilty as charged of residential burglary.

## ANALYSIS

Ziranski seeks reversal, arguing insufficient evidence supports the jury finding he committed the crime of residential burglary.

6

The State has the burden to prove every element of the crime charged beyond a reasonable doubt. U.S. CONST. amend XIV; WASH. CONST. art. I, § 3; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Winship, 397 U.S. at 364; State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Sufficiency of the evidence is a question of constitutional law that we review de novo. Rich, 184 Wn.2d at 903.

Evidence is sufficient to support a conviction if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750-51, 399 P.3d 507 (2017). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In determining sufficiency, circumstantial evidence is no less reliable than direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on "issues of witness credibility." Witherspoon, 180 Wn.2d at 883.

To convict Ziranski of residential burglary, the State had to prove beyond a reasonable doubt that "with intent to commit a crime against a person or property," he entered or remained "unlawfully in a dwelling" on January 5, 2016 in violation of RCW 9A.52.025(1). A "dwelling" is "any building or structure, though movable or temporary,

7

or a portion thereof, which is used or ordinarily used by a person for lodging." RCW 9A.04.110(7).

Whether the two-story building was a dwelling is a jury question and turns on consideration of a number of relevant factors, including whether the occupant deemed the house his abode and treated it as such, whether it is furnished or rented out periodically, if it was inhabited, whether it was maintained as a dwelling, and how long it was vacant. State v. McDonald, 123 Wn. App. 85, 91, 96 P.3d 468 (2004).

Ziranski asserts the State did not prove beyond a reasonable doubt the essential element that the apartment was a "dwelling" because no one occupied the apartment in the two-story building as a lodging on January 5, 2016.

The uncontroverted evidence established Paul's father-in-law used the apartment in the two-story building as a lodging for at least seven years and vacated the apartment by January 1, 2016 so that Paul could repair the mobile home and list the property for sale. Viewing the evidence in the light most favorable to the State, the evidence supports finding Paul's father-in-law lived in the apartment as lodging and deemed the apartment to be his abode from at least 2009 until January 1, 2016. A reasonable inference from the evidence is that Paul planned to sell the property with the mobile home and the two-story building with the apartment as dwellings.

Ziranski also claims the apartment could not be a dwelling because there was no evidence that "there was any furniture" or "had a bathroom." The undisputed evidence established that Paul's father-in-law lived in the apartment for at least seven years and that the apartment was equipped with a kitchen and had a bedroom. A reasonable inference from the evidence is that the apartment was furnished and had a bathroom.

We conclude sufficient evidence supports the jury determination that the apartment in the two-story building was a "dwelling." We affirm the jury conviction for residential burglary.

WE CONCUR: